UNITED STATES DISTRICT COURT
For the District of Columbia

| | |
|---|---|
| In re: Blue Cross Blue Shield Antitrust Litigation (MDL No. 2406) | Civil Action Docket No._____ (Matter pending in N.D. Ala. under Docket No. 2:13-CV-20000-RDP) |

## NON-PARTY, HEALTH CARE COST INSTITUTE, INC.'S MOTION TO QUASH SUBPOENA SERVED BY PROVIDER PLAINTIFFS

Pursuant to Federal Rule of Civil Procedure 45(d)(3), non-party, Health Care Cost Institute, Inc. ("HCCI"), hereby moves this Court to quash the Subpoena, dated July 26, 2016, served on it by the Provider Plaintiffs in the *In re Blue Cross Blue Shield Antitrust Litigation* matter, currently pending in the Northern District of Alabama under Docket No. 2:13-CV-20000-RDP.

### Procedural Background

In the Northern District of Alabama is pending *In re Blue Cross Blue Shield Antitrust Litigation* as Docket No. 2:13-CV-20000-RDP (the "Underlying Lawsuit"). On or about July 26, 2016, the Provider Plaintiffs in the Underlying Lawsuit served a subpoena on HCCI which sought certain data and directed that the data be produced in the District of Columbia (the "Subpoena"). *See* the Declaration of David Newman in Support of Motion to Quash Subpoena ("Newman Decl.") at ¶ 28.

In response to the Subpoena, HCCI served objections. *Id.* at ¶ 29. HCCI objected that the Subpoena seeks data which is confidential to HCCI and to the data contributors who provided it to HCCI; and that the release of the information sought by the Subpoena would be harmful to HCCI and threaten its mission and its very existence. *Id.*

On or about October 12, 2016, counsel for the Provider Plaintiffs indicated that it was attempting to narrow the information sought from HCCI and asked HCCI to produce the information but that if it did not, the Provider Plaintiffs would file a motion to compel. *Id.* at ¶ 30. Notwithstanding that the Subpoena sought compliance in the District of Columbia, counsel for the Provider Plaintiffs apparently seeks to enforce the subpoena in the Northern District of Alabama. *Id.* at ¶¶ 28, 30.

Because the Provider Plaintiffs' proposal does not address the most significant issues implicated by the Subpoena, *i.e.,* the confidentiality and security of the data and the harm which would be caused to HCCI and its data contributors by releasing the information, HCCI notified counsel for the Provider Plaintiffs of its intention to continue to rely on its previously-served objections and HCCI now files this motion to quash the subpoena. *Id.* at ¶ 31.

### Factual Background

HCCI is a non-profit corporation, incorporated in the District of Columbia and having its principal place of business at 1100 G Street, NW, Washington, DC 20005. Newman Decl. at ¶ 3. HCCI was founded in 2011. *Id.* at ¶ 4. Its mission is to promote independent research and analysis on the causes of rising health spending in the United States, to provide policy makers, consumers, and researchers with better, more transparent information on what is driving health care costs, and to help ensure that, over time, the United States is able to obtain greater value from its health spending. *Id.* at ¶ 5.

HCCI accomplishes its mission by gathering health care cost and utilization data from certain data contributors including Aetna, United Healthcare, and Humana (all competitors to the Blue Cross / Blue Shield insurers) pursuant to contracts which HCCI has entered into with such data contributors. *Id.* at ¶ 6. HCCI gathers the data on an on-going basis. *Id.* at ¶ 7. The data

provided to HCCI has been de-identified, pursuant to 45 C.F.R. § 164.514(b). *Id.* at ¶ 8. HCCI uses a process of statistical deidentification where an expert determines that there is a low probability of reidentification so long as the data are appropriately masked. *Id.* These probabilities can change over time so HCCI rigorously oversees the use of these data to prevent any authorized users from reidentifying an individual. *Id.*

The data provided to HCCI by its data contributors has been defined as confidential by the agreements HCCI has concluded and HCCI has agreed to treat such data as confidential and proprietary. *Id.* at ¶ 9. The data HCCI receives is also protected from disclosure by the Health Insurance Portability and Accountability Act (HIPAA) because it contains personal health information that has the potential to be reidentified if the data is not handled correctly. *Id.* at ¶ 10. The data is also considered to be business proprietary information by the data contributors because it contains the actual negotiated prices paid by the data contributor (who are health insurers) to a provider or supplier of health care goods or services. *Id.* at ¶ 11.

HCCI has agreed to only make the data it receives from its data contributors available to researchers and policymakers. *Id.* at ¶ 12. HCCI is contractually prohibited from making the data available for any commercial use or use other than by researchers and policymakers. *Id.* One of the reasons the data contributors provide HCCI with access to their respective data is because of the confidentiality HCCI has agreed to impart to the data. *Id.* at ¶ 14. HCCI's data contributors will no longer provide their data to HCCI if HCCI is no longer able to keep the data confidential. *Id.* at ¶ 15.

As a result of HCCI's efforts to reach contractual arrangements with contributors to obtain data, HCCI has gathered an unprecedented amount of health care cost and utilization data covering all ages and health issues, and covering geographic areas and private health insurance

marketplaces across the United States for its limited public purposes. *Id.* at ¶ 16. HCCI has data relating to 25% of the commercially insured population of the United States. *Id.* The data HCCI has gathered was not previously accessible to researchers or policymakers. *Id.*

HCCI makes the data it has gathered available to researchers and policymakers trying to perform non-commercial research to understand the factors influencing health care costs. *Id.* at ¶ 17. HCCI provides access to the data under licenses it grants to researchers and policymakers for a fee. *Id.* at ¶ 18. The researchers only gain access to the data through a secure data enclave that is hosted by a vendor for HCCI, but controlled by HCCI which ensures a high degree of security for the data. *Id.* at ¶ 19. The HCCI license fee is a fee for recovering the costs of aggregating the data and sharing it through the secure enclave. *Id.* at ¶ 18.

Since its founding in 2011, HCCI has become the definitive source of data on the commercially insured population in the United States. *Id.* at ¶ 21. This is a very significant public-private initiative between a non-profit corporation and private industry that is unprecedented in this country. *Id.* President Obama referenced research by HCCI in the 2013 Economic Report of the President and research findings based upon HCCI's data in the 2014 Economic Report of the President. *Id.* at ¶¶ 22, 23. On December 15, 2015, analysis by HCCI was the basis for a front-page story in the *New York Times* by Kevin Quealy and Margot Sanger-Katz entitled "The Experts Were Wrong About the Best Places for Better and Cheaper Health Care." *Id.* at ¶ 24. President Obama also cited HCCI's research findings repeatedly in his recent Journal of the American Medical Association article. *Id.* at ¶ 25. Currently, there are approximately thirty (30) non-commercial research projects at Stanford University, Harvard University, University of Pennsylvania, University of Michigan, University of Minnesota,

Northwestern University, and the Massachusetts Institute of Technology, among others, utilizing HCCI data through licenses from HCCI. *Id.* at ¶ 26.

HCCI also maintains, as part of its public-service mission, a free consumer website offering price and quality transparency to all Americans. *Id.* at ¶ 27. This website was developed at considerable cost to HCCI and is also dependent on the data that the data contributors provide to HCCI. *Id.*

## ARGUMENT

Federal Rule of Civil Procedure 45 provides that "the court for the district where compliance [with the subpoena] is required must quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Rule 45 also provides that "to protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B).

The Subpoena should be quashed for the following reasons: First, the information sought by the Subpoena is confidential to both HCCI and its data contributors and protected from disclosure. Second, if HCCI is required to produce the information, HCCI's ability to continue its public mission will be harmed and its very existence would be threatened. Third, if HCCI is required to produce the information, it will impose an undue burden on HCCI and its resources, which burden would be obviated if the Provider Plaintiffs obtain the data from the data contributors who provided it to HCCI in the first instance.

## I. The Information Sought by the Subpoena is Confidential to HCCI and its Data Contributors and is Protected from Disclosure.

The Subpoena seeks very detailed data regarding health care costs and utilization on a patient level for approximately 25% of the commercially-insured population in the United States. Newman Decl. at ¶ 32. For example, the Subpoena seeks information about specific patients, including their gender, age, geographic locations and diagnoses. *Id.* The data provided to HCCI has been de-identified, pursuant to 45 C.F.R. § 164.514(b). *Id.* at ¶ 8. HCCI uses a process of statistical deidentification where an expert determines that there is a low probability of reidentification so long as the data are appropriately masked. *Id.* These probabilities can change over time so HCCI rigorously oversees the use of these data to prevent any authorized users from reidentifying an individual. *Id.* The data is protected from disclosure by the Health Insurance Portability and Accountability Act (HIPAA) because it contains personal health information that has the potential to be reidentified if the data is not handled correctly. *Id.* at ¶ 10. If HCCI were required to produce the data in response to the Subpoena, HCCI would lose oversight over the data and there is a risk that individuals could be reidentified, violating HIPAA. *Id.* at ¶¶ 46-49.

The Subpoena also seeks data about the medical goods and services received by the patients, including the amounts charged by the provider and the amounts paid by the data contributors, *i.e.*, insurers. *Id.* at ¶ 33. That data is business proprietary to the data contributors because it contains the actual negotiated prices paid to a provider. *Id.* It is for that reason that the data providers have contractually required that HCCI treat it as confidential and proprietary and prohibited HCCI from providing the data to any licensee for commercial use. Here, the Provider Plaintiffs seek data which was provided to HCCI by Aetna, United Healthcare and Humana, all of whom are competitors to the Blue Cross / Blue Shield insurers who are parties to the Underlying Lawsuit. *Id.* at ¶ 6. Thus, production of the data sought by the Subpoena would

result in disclosure of the data to competitors of Aetna, United Healthcare, and Humana. Courts have "acknowledged that disclosure of confidential information to a competitor is presumed to be harmful to the disclosing entity." *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003); *Total Containment Solutions, Inc. v. Glacier Energy Services, Inc.*, 2015 WL 6560615 at * 3 (M.D. Fla. 2015); *United Technologies Corp. v. Mazer*, 2007 WL 788877 at * 1 (S.D. Fla. 2007). *Fadalla v. Life Automotive Prods., Inc.*, 258 F.R.D. 501, 506 (M.D. Fla. 2007) (although information sought was relevant to party's claims, subpoena to non-party would be quashed where it sought, among other things, information protected from disclosure by contract). The Subpoena should be quashed, if only to prevent the release of data to competitors of HCCI's data contributors. Newman Decl. at ¶¶ 35, 36.

The data sought by the Subpoena has never before been compiled and access to such a body of data did not exist prior to HCCI compiling it and selling licenses to researchers and policymakers to access it. *Id.* at ¶ 34. For that reason, the data is also proprietary to HCCI. *Id.* at ¶ 37. Because the data sought by the Subpoena is confidential and proprietary to HCCI and the data contributors, it is protected from disclosure by Rule 45(d)(3)(A). For that reason alone, the Subpoena should be quashed.

> II. **HCCI's Ability to Continue its Public Mission and its Very Existence Would be Imperiled if it were Required to Produce the Information Sought by the Subpoena.**

HCCI provides a valuable public service. HCCI has become the definitive source of data on the commercially insured population in the United States and provides access to the data to researchers and policymakers. As described above, HCCI's activities have been favorably cited by President Obama and its data has served as the basis for important media stories and journal articles. HCCI's data is also used by research projects at some of the leading universities in the

United States. HCCI's purpose is to promote independent research and analysis on the causes of rising health spending in the United States, to provide policy makers, consumers, and researchers with better, more transparent information on what is driving health care costs, so that over time the United States is able to obtain greater value from its health spending. HCCI also provides public access to a free consumer website offering price and quality transparency to all Americans, utilizing the data provided HCCI by its data contributors.

HCCI's ability to serve the public is dependent upon its ability to continue to acquire health care cost and utilization data from its data contributors which, in turn, is dependent upon HCCI's agreement to treat such data as confidential and its ability to secure it. Newman Decl. at ¶ 41. If HCCI is required to produce data in response to the Subpoena, the risk of data being turned over to third-parties would be a disincentive to HCCI's current data contributors to continue providing their respective health care cost and utilization data to HCCI and they would likely stop providing data to HCCI. *Id.* at ¶¶ 41, 43. It would similarly impact HCCI's ability to seek out and secure additional and new data contributors willing to provide their health care cost and utilization data to HCCI, because any new data contributors would fear the risk that their data may be disclosed to third parties. *Id.* at ¶ 44. It would harm HCCI's competitive advantage and risk its ability to continue its activities. *Id.* at ¶ 40.

Without being able to continue receiving data from its current data contributors, HCCI's ability to continue to license data to researchers and policymakers would be jeopardized. *Id.* at ¶¶ 41, 42. HCCI's ability to maintain its free consumer website would similarly be jeopardized. *Id.* at ¶ 45. With HCCI's mission imperiled by being required to comply with the Subpoena,

HCCI's very existence would be placed in jeopardy through compliance with the Subpoena.[1] *Id.* at ¶¶ 40-45. The Subpoena should be quashed to protect HCCI from the harm posed by required compliance with the Subpoena.

### III. If HCCI is Required to Produce the Information Sought by the Subpoena, it will impose an Undue Burden on HCCI.

The Court in the Underlying Lawsuit has stated that "[p]arties simply do not have the unfettered right to seek discovery from non-parties," and "[i]mplied throughout Rule 45 is the concern that non-parties *not* be unduly burdened with discovery." *In re: Blue Cross Blue Shield Antitrust Litigation,* N.D. Ala. Docket No. 2:13-cv-20000-RDP at ECF No. 641 at 3.

If HCCI is required to produce the data sought by the Subpoena, then an undue burden would be imposed on HCCI. First, as described above, compliance with the Subpoena imperils HCCI's ability to continue with its mission and, indeed, jeopardizes HCCI's very existence. That is a burden too great to impose upon a non-party, like HCCI, and alone justifies quashing the subpoena.

Second, if HCCI were forced to respond to the Subpoena, it would result in additional burdens being imposed on HCCI. HCCI has a very small professional staff with only three (3) employees who have experience with its data. Newman Decl. at ¶ 50. All of HCCI's data is housed in a secure data enclave operated by a third-party vendor. *Id.* Therefore, compliance with the Subpoena would require one of HCCI's three employees with data experience to coordinate with HCCI's vendor to prepare a dataset to provide to the Provider Plaintiffs. *Id.* This would be a distraction from HCCI's mission, as described above, and would be a diversion

---

[1] Ironically, if HCCI is required to respond to the Subpoena, it would result in the Provider Plaintiffs and the other parties in *In re Blue Cross Blue Shield Antitrust Litigation,* receiving greater access to HCCI's data than even HCCI's data contributors and HCCI's licensees receive. Newman Decl. at ¶¶ 20, 39.

of HCCI's scarce human resources. *Id.* HCCI would also be forced to incur significant out-of-pocket expenses in connection with providing the data sought by the Subpoena. *Id.* at ¶ 51. For example, the mere cost of delivering the data set would be at $22,000 (and could be significantly more), without taking into consideration the time and expense of preparing the data set for delivery and accomplishing a secure transfer of the data. *Id.* In the event a custom data set is requested, the cost would be much more. *Id.* The burden imposed on HCCI to comply with the Subpoena is outweighed by any need the Provider Plaintiffs may be able to demonstrate for the data HCCI has, and justifies the Court quashing the Subpoena. *See North Carolina Right to Life, Inc. v. Leake,* 231 F.R.D. 49, 51-52 (D.D.C. 2005) (subpoena would be quashed where it imposed undue burden by seeking vast array of documents and would divert significant proportion (50% for one and 20% for another) of employees of nonprofits to comply with subpoena); *Education Finance Council v. Oberg,* 2010 WL 3719921 at * 3, 4 (D.D.C. March 8, 2010) (subpoena imposed undue burden where it sought "cumulative information" from nonparty that is more conveniently obtained from defendants and where compliance would "substantially disrupt" operations).

While the burden on HCCI of compliance with the Subpoena is significant, there is a way for the Provider Plaintiffs to obtain the data sought by the Subpoena without imposing burden on HCCI. That is, the Provider Plaintiffs could obtain it from the data contributors that provided it to HCCI in the first instance. Newman Decl. at ¶ 52. That would obviate the burden on HCCI. *Id.* The Provider Plaintiffs should be required to obtain the data sought by the Subpoena from the entities who have it in the first place. *Millennium TGA, Inc. v. Comcast Cable Communications LLC,* 286 F.R.D. 8, 11 (D.D.C. 2012) ("our circuit court has admonished district courts to be 'generally sensitive to the costs imposed on third parties' when considering a

motion to compel (or quash) pursuant to Rule 45, reminding us to consider 'whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive.'")

### IV.     Conclusion.

This Court should quash the Provider Plaintiffs' Subpoena to protect non-party, HCCI, from the harm posed by complying with the Subpoena.  There is a readily available alternative that would allow the Provider Plaintiffs to obtain the discovery they seek without imposing any burden or harm on HCCI.  To not quash the subpoena would unfairly allow the Provider Plaintiffs and other parties in the Underlying Lawsuit to takes advantage of HCCI's hard work and industry in building a non-profit to compile an unprecedented amount of data to be used for advancing the public good, and to use the data at no cost to obtain a litigation advantage in the Underlying Lawsuit, which HCCI has nothing to do with.  All of this at the cost of destroying HCCI's ability to fulfill its mission and continue to serve the public good.  Therefore, HCCI respectfully requests that this Court issue an order quashing the Subpoena served by the Provider Plaintiffs.

Date: October 19, 2016

/s/ Eric J. Wycoff
Eric J. Wycoff, Esq. #469939
ewycoff@pierceatwood.com
PIERCE ATWOOD LLP
254 Commercial Street
Portland ME  04101
 (207) 791-1100 (voice)
(207) 791-1350 (facsimile)

*Attorneys for Non-Party Health Care Cost Institute, Inc.*