# UNITED STATES DISTRICT COURT
### For the District of Columbia

| | |
|---|---|
| **In re:  Blue Cross Blue** | **Civil Action Docket No._____** |
| **Shield Antitrust Litigation** | **(Matter pending in N.D. Ala. under Docket No. 2:13-CV-20000-RDP)** |
| **(MDL No. 2406)** | |

## DECLARATION OF DAVID NEWMAN IN SUPPORT OF HEALTH CARE COST INSTITUTE, INC.'S
## MOTION TO QUASH SUBPOENA SERVED BY PROVIDER PLAINITFFS

I, David Newman, PhD, JD, hereby declare as follows:

1.      I make this Declaration based upon personal knowledge.

2.      I am the President of Health Care Cost Institute, Inc., ("HCCI").  I have been in that position since December 5, 2011.

3.      HCCI is a non-profit corporation, incorporated in the District of Columbia and having its principal place of business located at 1100 G Street, NW, Washington, DC 20005.

4.      HCCI was founded in 2011.

5.      HCCI's mission is to promote independent research and analysis on the causes of rising health spending in the United States, to provide policy makers, consumers, and researchers with better, more transparent information on what is driving health care costs, and to help ensure that, over time, the United States is able to obtain a greater value from its health spending.

6.      HCCI accomplishes its mission by gathering health care cost and utilization data from certain data contributors including Aetna, United Healthcare, and Humana (all competitors to the Blue Cross / Blue Shield insurers) pursuant to contracts which HCCI has entered into with such data contributors.

7.      HCCI gathers the data on an on-going basis.

8.      The data provided to HCCI has been de-identified, pursuant to 45 C.F.R.

§ 164.514(b).  HCCI uses a process of statistical deidentification where an expert determines that

there is a low probability of reidentification so long as the data are appropriately masked.  These

probabilities can change over time so HCCI rigorously oversees the use of these data to prevent

any authorized users from reidentifying an individual.

9.      The data provided to HCCI by its data contributors has been defined as

confidential by the agreements HCCI has concluded and HCCI has agreed to treat such data as

confidential and proprietary.

10.     The data HCCI receives from data contributors is also protected from disclosure

by the Health Insurance Portability and Accountability Act (HIPAA) because it contains personal

health information that has the potential to be reidentified if the data is not handled correctly.

11.     The data HCCI receives from its contributors is also data which the data

contributors consider to be business proprietary information because it contains the actual

negotiated prices paid by the data contributor to a provider or supplier of health care goods or

services.

12.     HCCI has agreed to only make the data it receives from its data contributors

available to researchers and policymakers.  HCCI is contractually prohibited from making the

data available for commercial use or any use other than by researchers and policymakers.

13.     HCCI does not provide access to the data to the data contributors.  The data

contributors are unable to access data contributed to HCCI by anyone else.

14.     Based on our interactions with HCCI's data contributors, I believe that one of the reasons the data contributors provide HCCI with access to their respective data is because of the confidentiality HCCI has agreed to impart to the data.

15.     Based on our interactions with HCCI's data contributors, I believe that HCCI's data contributors will no longer provide their data to HCCI if HCCI is no longer able to keep the data confidential.

16.     As a result of its efforts to reach contractual arrangements with contributors to obtain data, HCCI has gathered an unprecedented amount of health care cost and utilization data covering all ages and health issues, and covering geographic areas and private health insurance marketplaces across the United States for its limited public purposes.   The data HCCI has relates to approximately 25% of the commercially insured population of the United States.  The data HCCI has compiled was not previously accessible to researchers or policymakers.

17.     HCCI makes the data it has gathered available to researchers and policymakers trying to perform non-commercial research to understand the factors influencing health care costs.

18.     HCCI provides access to the data under licenses it grants to researchers and policymakers for a fee, which is designed to allow HCCI to recover the costs of aggregating the data and sharing it through the secure data enclave.

19.     The researchers only gain access to the data through a secure data enclave that is hosted by a vendor for HCCI, but controlled by HCCI, which ensures a high degree of security for the data.

20.     The researchers are required to sign a non-disclosure agreement with HCCI which safeguards the confidentiality of the data; preserves its business proprietary status; prevents the

reidentification of the insurers, providers, and patients; and prohibits the release of the underlying data.

21.     Since its founding in 2011, HCCI has become the definitive source of data on the commercially insured population in the United States.  This is a very significant public-private initiative between a non-profit corporation and private industry that is unprecedented in this country.

22.     President Obama referenced research by HCCI in the 2013 Economic Report of the President.  *See* Economic Report of the President (2013) at 180.

23.     President Obama referenced research findings based upon HCCI's data in the 2014 Economic Report of the President.  *See* Economic Report of the President (2014) at 161 (the reference to Yamamoto is to research utilizing HCCI's data).

24.     On December 15, 2015, analysis by HCCI was the basis for a front-page story in the *New York Times* by Kevin Quealy and Margot Sanger-Katz entitled "The Experts Were Wrong About the Best Places for Better and Cheaper Health Care."

25.     President Obama cited HCCI's research findings repeatedly in his recent Journal of the American Medical Association article.  *See* Barack Obama, *United States Health Care Reform:  Progress to Date and Next Steps*, J. Am. Med. Assoc. (Aug. 2, 2016).

26.     Currently, there are approximately thirty (30) non-commercial research projects at Stanford University, Harvard University, University of Pennsylvania, University of Michigan, University of Minnesota, Northwestern University, and the Massachusetts Institute of Technology, among others, utilizing HCCI data through licenses from HCCI.

27.     HCCI also maintains, as part of its public-service mission, a free consumer website offering price and quality transparency to all Americans.  This website was developed at

considerable cost to HCCI and is also dependent on the data that the data contributors provide to HCCI.

28.     Attached hereto as Exhibit A is the Subpoena dated July 26, 2016, issued by the Provider Plaintiffs to HCCI (the "Subpoena") in the *In re Blue Cross Blue Shield Antitrust Litigation* pending in the Northern District of Alabama as Docket No. 2:13-CV-20000-RDP, which I have reviewed.

29.     Attached hereto as Exhibit B is a copy of HCCI's Objections to the Subpoena dated August 9, 2016, which was served on counsel for the Provider Plaintiffs and which I have reviewed.

30.     Attached hereto as Exhibit C is a copy of correspondence HCCI's attorney has received from counsel for the Provider Plaintiffs, which is dated October 12, 2016 (the "Correspondence"), which I have reviewed.

31.     Attached hereto as Exhibit D is a copy of correspondence HCCI's attorney provided to counsel for the Provider Plaintiffs, which is dated October 17, 2016, which I have reviewed.

32.     The Subpoena seeks very detailed data regarding health care costs and utilization on a patient level.  For example, the Subpoena seeks data about specific patients, including their gender, age, geographic locations and diagnoses.

33.     The Subpoena also seeks data about the medical goods and services received by the patients, including the amounts charged by the provider and the amounts paid by the data contributors, *i.e.,* insurers.  As described above, the data is business proprietary to the data contributors as it contains the actual negotiated prices paid to a provider.

34.     The data sought by the Subpoena has never before been compiled and access to such a body of data did not exist prior to HCCI compiling it and selling licenses to researchers and policymakers to access it.

35.     If HCCI were required to respond to the Subpoena it would be forced to produce data which has been defined as confidential and proprietary by the agreements HCCI has entered into with its data contributors.

36.     If HCCI were required to respond to the Subpoena it would be forced to produce data which its data contributors consider to be business proprietary information.

37.     If HCCI were required to respond to the Subpoena it would be forced to produce data which is HCCI's own business proprietary information.

38.     If HCCI were required to respond to the Subpoena it would be forced to produce data which, under normal circumstances, it only allows researchers and policymakers to access after payment of a licensing fee.

39.     If HCCI were required to respond to the Subpoena it would be forced to provide access to the data to the Provider Plaintiffs and the other parties in *In re Blue Cross Blue Shield Antitrust Litigation,* which is greater than the access HCCI's data contributors receive and HCCI's licensees receive.

40.     If HCCI were required to respond to the Subpoena it would harm HCCI's competitive advantage and risk HCCI's ability to continue to operate and conduct its activities.

41.     HCCI can only pursue its public mission so long as the data contributors provide HCCI with timely health care cost and utilization data containing the actual prices paid by insurers.  If HCCI is no longer able to secure the data it receives, the data contributors would likely stop providing HCCI with their data, which would cause HCCI to cease to exist since it

could not generate its annual reports, support academic research activities, or assist States with their price transparency initiatives.

42.     If the data contributors did not provide data to HCCI, academic researchers would no longer have access to these data through HCCI and there would be no existing mechanism for aggregating health care claims data to support public, non-proprietary, research into the drivers of health care utilization and costs.

43.     If HCCI were required to respond to the Subpoena, it would harm HCCI's competitive advantage and risk HCCI's ability to continue to operate and conduct its activities because the risk of data being turned over to third-parties would be a disincentive to HCCI's current data contributors to continue providing their respective health care cost and utilization data to HCCI.

44.     If HCCI were required to respond to the Subpoena, it could harm HCCI's ability to seek out and secure additional and new data contributors who are willing to provide their health care cost and utilization data to HCCI, because they would fear the risk that the data may be disclosed to third parties.

45.     If HCCI were required to respond to the Subpoena and its data contributors cease providing data to HCCI, with no alternative sources for the data, then HCCI's free consumer website would suffer and its existence would be threatened as it would no longer have access to the relevant data.

46.     If HCCI were required to respond to the Subpoena it could harm the de-identified status of the data.

47.     Given the sensitivity of health care data and the potential for data breaches, HCCI has undertaken broad efforts to protect the health care cost and utilization data it has gathered, by

securing the data in one location and actively controlling access to and use of the data.  For example, HCCI can monitor authorized users down to the keystroke.

48.     Each time a dataset is replicated and distributed, something HCCI does not generally do, there is a new risk that either the recipient will do something that alters the probability of reidentification or the likelihood of a breach. Either of these risks would change the willingness of the data contributors to share their confidential data with HCCI.

49.     If HCCI were required to respond to the Subpoena, HCCI would not be able to maintain any control over the data provided in response to the Subpoena, which could further result in the reidentification of individuals to whom the data relates.

50.     If HCCI were required to respond to the Subpoena, it would result in significant hardship to HCCI.  First, HCCI has a very small professional staff with only three (3) employees who have experience with its data.  All of HCCI's data is housed in a secure data enclave operated by a third-party vendor.  Therefore, compliance with the Subpoena would require one of HCCI's three employees who have experience with the data to coordinate with HCCI's vendor to prepare a dataset to provide to the Provider Plaintiffs.  This would be a distraction from HCCI's mission, as described above, and a diversion of HCCI's scarce human resources.

51.     Second, HCCI would be forced to incur significant out of pocket expenses in connection with providing the data sought by the Subpoena. For example, the mere cost of delivering the data set would be at least $22,000 but could be significantly more, without taking into consideration the time and expense of preparing the data set for delivery and accomplishing a secure transfer of the data.  In the event a custom data set is requested, the cost would be much more.

52.     Because HCCI receives its data from data contributors, any burden imposed upon HCCI to respond to the Subpoena would be obviated if the Provider Plaintiffs sought it directly from the data contributors.

53.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  October 19, 2016                     /s/ David Newman
                                             David Newman, PhD, JD

# UNITED STATES DISTRICT COURT
## For the District of Columbia

| | |
|---|---|
| **In re:  Blue Cross Blue** | **Civil Action Docket No._____** |
| **Shield Antitrust Litigation** | **(Matter pending in N.D. Ala. under Docket No. 2:13-CV-20000-RDP)** |
| **(MDL No. 2406)** | |

### Exhibit A to

### Declaration of David Newman in Support of
### Health Care Cost Institute, Inc.'s Motion to Quash Subpoena

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Alabama

| | |
|---|---|
| In re:  Blue Cross Blue Shield Antitrust Litigation | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   2:13-CV-20000-RDP

## CORRECTED SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          Health Care Cost Institute, Inc. (HCCI)
                    1100 G Street, NW, Suite 600, Washington, DC 2005

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Attachment A hereto.

| Place: BAILEY GLASSER LLP | Date and Time: |
|---|---|
| 910 17th Street, NW, Suite 800 Washington, DC  20006   Tel: (202) 463-2101 | 08/25/2016 10:00 am |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/26/2016

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
| _____ | /s/ Patrick J. Sheehan |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Provider Plaintiffs
_____ , who issues or requests this subpoena, are:

Patrick J. Sheehan, Whatley Kallas, LLP, 60 State Street, Boston, MA  02109; Tel: 617-573-5118

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:13-CV-20000-RDP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**PROVIDER PLAINTIFFS' REQUEST FOR PRODUCTION
OF DOCUMENTS DIRECTED TO HEALTH CARE COST INSTITUTE, INC.**

**DEFINITIONS**

The following definitions apply to this Request for Production of Documents (the "Request") and are deemed to be incorporated into the Request:

1.      "Claims Data" means any information reflecting a health care claim adjudication involving facilities, goods and/or services rendered by a Health Care Provider.

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "Documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of this term.

3.      "Employee" means any of Your current or former officers, directors, managers, sales personnel, secretaries, clerical staff, messengers, agents, representatives, and other Persons acting or purporting to act on behalf of any of the foregoing.

4.      "ESI" means "electronically stored information," which is defined to be synonymous in meaning and equal in scope to the usage of the term "electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).

5.      "Health Care Provider" should be construed in the broadest sense possible, and includes all providers of health care services, goods, supplies or facilities of any kind.

6.      "Generalized Data Field" or "Generalized Data Fields" means a generalized description of a data field or multiple data fields present in HCCI's current or legacy systems.

7.      "HCCI" means Health Care Cost Institute, Inc., an independent, non-profit Washington, DC organization, including any and all of the foregoing entity's predecessor

organizations and subsidiaries, together with their officers, directors, agents, commissioners, employees, or representatives, and all persons acting or purporting to act on their behalf, including independent contractors or consultants.

8.      "Contributor" means the entities providing data to HCCI, including, but not limited to, Aetna, Assurant Health, Humana, and UnitedHealth.

9.      "Person" or "Persons" means any natural person or any legal entity, including, without limitation, any business, governmental entity, or association.

10.      "Provider Plaintiffs" means Jerry L. Conway, D.C., Corey Musselman, M.D., The San Antonio Orthopaedic Group, L.L.P., Orthopaedic Surgery Center of San Antonio, L.L.P., Charles H. Clark III, M.D., Crenshaw Community Hospital, Bullock County Hospital, Fairhope Cosmetic Dentistry and Fresh Breath Center, P.C., Sports and Ortho, P.C., Kathleen Cain, M.D., Northwest Florida Surgery Center, L.L.C., Wini Hamilton, D.C., Jay Korsen, D.C., North Jackson Pharmacy, Inc., Neuromonitoring Services of America, Inc., Cason T. Hund, D.M.D., ProRehab, P.C., Texas Physical Therapy Specialists, L.L.C., BreakThrough Physical Therapy, Inc., Dunn Physical Therapy, Inc., Gaspar Physical Therapy, P.C., Timothy H. Hendlin, D.C., Greater Brunswick Physical Therapy, P.A., Charles Barnwell, D.C., Brain and Spine, L.L.C., Heritage Medical Partners L.L.C., Judith Kanzic, D.C., Brian Roadhouse, D.C., Julie McCormick, M.D., L.L.C., Harbir Makin, M.D., Saket K. Ambasht, M.D., John M. Nolte, M.D., Bauman Chiropractic Clinic of Northwest Florida, P.A., Joseph S. Ferezy, D.C. d/b/a Ferezy Clinic of Chiropractic and Neurology, Snowden Olwan Psychological Services, Ear, Nose & Throat Consultants and Hearing Services, P.L.C. and U.S. Imaging Network, L.L.C. d/b/a Imaging Network Administrators, L.L.C.

11.      "You" and "Your" mean HCCI, as defined above.

12.     The term "and" means and/or.

13.     The term "any" means any and all.

14.     The term "each" means each and every.

15.     The term "including" means including but not limited to.

16.     The term "or" means and/or.

17.     The use of the singular form includes the plural, and the plural includes the singular.

## **INSTRUCTIONS**

1.      The information requested in this subpoena *duces tecum* is being sought as part of the multi-district litigation entitled, *In re Blue Cross Blue Shield Antitrust Litigation* (MDL No. 2406), Case No. 2:13-cv-20000-RDP (N.D. Ala.), which involves alleged antitrust violations by the Blue Cross Blue Shield Association and a number of for-profit and non-profit independent health insurance companies that currently license or have at any time licensed the Blue Cross and/or Blue Shield trademarks or trade names.

2.      This subpoena is authorized under 28 U.S.C. § 1407, the Federal Rules of Civil Procedure, Discovery Order No. 1 (Oct. 16, 2014) (Dkt. # 229), and any other applicable orders issued by the Court.

3.      All data produced pursuant to this subpoena will be governed by the Protective Order (Feb. 23, 2016) (Dkt. # 550), a copy of which is attached hereto as **Exhibit 1**.

4.      If You are unable to answer or respond fully to any Request, answer or respond to the extent possible and specify the reasons for Your inability to answer or respond in full.

5.      Any objections, questions or concerns about the information requested should be directed to issuing counsel, at the address listed on the subpoena.

6.      If You object to any portion or aspect of a Request, please specify the portion or aspect of the Request to which You object, state the basis for Your objection, and produce all data responsive to the remainder of the Request.

7.      If any requested data will not be produced in full, produce it to the extent possible, indicating which portion of the document is being withheld and the basis for it being withheld.

8.      If You refuse to produce documents on the ground that compliance would be unduly burdensome, set forth the number and nature of documents needed to be searched, the location of the documents, and the number of person-hours and costs that would be involved in conducting the search.

9.      In producing documents and other materials, You are requested to furnish all documents or things in Your possession, custody or control, without regard to their physical location.

10.     The Request covers all documents in the possession or custody of Your officers, employees, agents, servants, representatives, trustees, attorneys, consultants, or other Persons directly or indirectly employed or retained by You, or anyone else acting on Your behalf or otherwise subject to Your control, and any merged, consolidated, or acquired predecessor or successor, subsidiary, division, or affiliate.

11.     If any Document requested to be produced is not now in Your possession, custody, or control or that of Your employees, agents, representatives, officers, directors, but was previously in their or Your custody or control, You are required to: (a) Identify the Person who now has possession, custody, or control of the Document; and (b) Describe fully why You or

Your agents, representatives, or attorneys do not now have possession, custody, or control of the Document.

12.     If You encounter any ambiguity in construing the definitions below, these instructions, or the Request contained herein, You must set forth the matter deemed "ambiguous" and indicate the construction chosen and used in responding.

13.     Unless otherwise specified, the Request requires the production of all Documents responsive to the Request spanning the time period of January 1, 1995 to present. Provider Plaintiffs reserve the right to seek supplemental production of information responsive to the Requests, or additional Requests, through the date of trial.

14.     Any defined terms that are inadvertently not capitalized in the Request for Production should be read and interpreted as if they had been capitalized.

15.     Pursuant to Federal Rule of Civil Procedure 45(a)(1), electronically stored information ("ESI") is to be produced in accordance with the specifications contained in the parties' proposed Protocol Relating to the Production of Documents and Electronically Stored Information ("ESI") (Dkt. # 356), a copy of which is attached hereto as **Exhibit 2**.

## <u>STRUCTURED DATA PRODUCTION INSTRUCTIONS</u>

1.     Please produce all structured data in encrypted, compressed character delimited text files using delimiting characters TAB (ASCII character 9), "|" (vertical bar, ACII character 124) and "~" (tilde, ASCII character 126).  The first row of the structured data produced should contain the column headings from the applicable data dictionary.  The maximum compressed file size should be no more than 4GB.

2.     Alternatively, the structured data may be produced in an agreed-to Database management system.  If You wish to use this option, You are required to identify the proposed

Database management system in advance at which point Plaintiffs will either consent or suggest an alternative Database management system.

3.     The structured data should be delivered on one or more USB2 or firewire enabled portable external hard drives.

4.     The structured data should be accompanied by written or electronic instructions for opening files and stating specific size of each field, whether alpha or numeric, etc.

5.     All structured data productions must be produced with a data dictionary concerning each data field, including all field definitions, data entry, reference code and/or other information contained therein.   Additionally, all data productions must include any data dictionary or Documents which are or were used or provided to users of the structured data to explain and identify the information contained therein.

6.     Documents linked to, or otherwise programmatically integrated with, databases or source systems cannot be separated or produced out of sequence.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**Contributor Claims Data**

1.     All Contributor Claims Data relating to facilities, goods and/or services rendered by Health Care Providers in the United States contained in the following or comparable Generalized Data Fields:

      a.     Unique Facility Identifier

      b.     Facility National Provider Identifier (NPI)

      c.     Facility Address, including Street, City, State, and ZIP Code

      d.     Facility Type(s) or Specialt(ies)

      e.     Unique Billing and/or Contracting Provider Identifier

f.     Billing and/or Contracting Provider National Provider Identifier (NPI)

g.     Billing and/or Contracting Provider Address, including Street, City, State, and ZIP Code

h.     Billing and/or Contracting Provider Type(s) or Specialt(ies)

i.     Unique Servicing Provider Identifier

j.     Servicing Provider National Provider Identifier (NPI)

k.     Servicing Provider Address, including Street, City, State, and ZIP Code

l.     Servicing Provider Type(s) or Specialt(ies)

m.     Provider Employer Identification Number (EIN)

n.     Provider Network Status (e.g., in-network, out-of-network)

o.     Unique Contributor Identifier

p.     Unique Contributor Plan Identifier

q.     Plan Type (e.g., HMO, PPO, indemnity, self-funded, standalone)

r.     Plan Coverage Type (e.g., individual, small group, large group)

s.     Unique Patient Identifier

t.     Patient Sex

u.     Patient Age (in years)

v.     Patient ZIP Code

w.     Patient Relationship to Subscriber (e.g., self, spouse, child)

x.     Unique Group Identifier

y.     Group Name

z.     Group ZIP Code

aa.     Indicator of Group's Participation in a Network Savings Program

bb.   Unique Claim Identifier

cc.   Unique Claim Line Identifier

dd.   Medical Policy Number Applicable to Claim

ee.   Indicator of whether Original Claim or Adjustment to Claim

ff.   Indicator of whether Approved Claim or Denied Claim

gg.   Indicator of whether Inpatient Claim or Outpatient Claim

hh.   Indicator of Coordination of Benefits (e.g., primary, secondary, etc.)

ii.   Indicator of Workers' Compensation Program Claim

jj.   Claim Type (e.g., facility, professional, dental)

kk.   Start Date of Treatment or Admission

ll.   End Date of Treatment or Admission

mm.   Length of Stay (where applicable)

nn.   Admission Type

oo.   Discharge Status

pp.   Indicator of the Facility (where service was provided)

qq.   All Medical Codes associated with the Visit, Admission, Treatment, Anesthesia, Diagnosis, or Procedure (e.g., CPT, DRG, ICD, NDC, HCPCS, etc.), including all Modifiers

rr.   Units of Service and/or Quantity

ss.   Amount Allowed or Covered

tt.   Amount Billed or Charged

uu.   Amount Paid by Contributor

vv.   Amount Patient Responsible (e.g., deductible, coinsurance, copayment)

ww.   Amount Paid by Patient

xx.   Amount of any Reduction(s), Supplement(s), Discount(s), Restriction(s), or Penalt(ies), including Reason Code(s)

yy.   Adjudication Date

zz.   Indicator of the Recipient of Payment (e.g., subscriber, provider)

aaa.   Indicator of Payment Arrangement (e.g., per diem, capitation, percent of Medicare, percent of billed charges, etc.)

bbb.  Indicator of Applicable Rate (e.g., per diem rate, room rate, percentage, etc.)

# Exhibit 1

FILED

2016 Feb-23 AM 11:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406) | ) ) ) ) ) ) | **Master File** **No. 2:13-CV-20000-RDP** This document relates to all cases. |

## QUALIFIED PROTECTIVE ORDER

This matter is before the court on the Parties' joint motion for entry of an agreed Protective Order. (Doc. # 546). The court has determined that the Proposed Protective Order should be entered. Therefore, the Motion (Doc. # 546) is **GRANTED**. Discovery in the above-captioned litigation ("Proceeding") **SHALL** be governed by the following Qualified Protective Order ("Protective Order"), which amends the terms of the Protective Order entered by the court on December 17, 2013.

The Parties shall serve a copy of this Order simultaneously with any discovery request made to a third party.

The terms of this Protective Order are as follows:

1.     **Applicability.** This Protective Order is applicable to all plaintiffs and defendants, any additional parties joined in this Proceeding (collectively, the "Parties"), and any third-parties required to respond to discovery in this Proceeding, for the sole purpose of facilitating discovery in the Proceeding and

protecting the confidentiality and other interests of the Parties and third-parties throughout the course of this Proceeding including, but not limited to, trial. This Order authorizes the disclosure of information protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended by the Health Information Technology for Economic and Clinical Health Act (the "HITECH Act"), including all applicable regulations and guidance issued by the Secretary of the United States Department of Health and Human Services (collectively, the "HIPAA Rules"), including specifically 42 C.F.R. Part 2 and 45 C.F.R. §§ 164.512(e)(1)(ii)(B), 164.512(e)(1)(v), as well as all state laws and regulations regarding the privacy and security of personal information (collectively with the HIPAA Rules, the "Privacy and Security Rules"). This Order constitutes a Qualified Protective Order, as that term is defined in the Privacy and Security Rules. The parties are expressly prohibited from using or disclosing information protected by the Privacy and Security Rules obtained pursuant to this Order for any purpose other than this Action. Protections against the loss of any Attorney-Client Privilege, Work Product Protection or any other privilege or immunity are set out in a separate Protective Order under Fed. R. Evid. 502(d) Regarding Disclosure of Information Subject to Attorney-Client Privilege or Work Product Protection (Doc. 139).

2.     **Scope of Use.** All "Confidential," "Confidential−Attorneys' Eyes Only," and "Confidential−Outside Counsel Only" information produced or exchanged in the course of this Proceeding shall be used solely for the purpose of prosecuting or defending this Proceeding, including mediation, trial preparation, trial, and appeal, and for no other purpose whatsoever and shall not be disclosed to any person except in accordance with the terms of this Protective Order.

3.     **Designation of Information.** Any document, data, testimony, interrogatory answer, response to a request to admit, exhibit, and other information produced, served or otherwise disclosed to or by any Party or third party during the Proceeding as "Confidential," "Confidential−Attorneys' Eyes Only," or "Confidential−Outside Counsel Only" (collectively "Confidential Material") shall be in the manner that is consistent with the definitions and procedures set forth in this Protective Order. Documents previously produced shall be retroactively designated by notice in writing by Bates number or such other means that will allow for the identification of such documents. The inadvertent failure by a Party or third party to designate specific documents or materials as containing Confidential Material shall not be deemed a waiver in whole or in part of a claim of confidentiality as to such documents or materials. Upon notice to each Party of such failure to designate, each Party shall cooperate to restore the confidentiality of the inadvertently disclosed information.

a.    **"Confidential" Designation.** A Party or third party may designate as "Confidential" any Confidential Material that it reasonably and in good faith believes contains any trade secret, other personal information of any Party or third party, or other confidential research, development, or commercial information, as referenced in Fed. R. Civ. P. 26(c)(1)(G), provided that the confidentiality has been subject to efforts to maintain confidentiality that are reasonable under the circumstances.

b.    **"Confidential−Attorneys' Eyes Only" Designation.** A Party may designate as "Confidential−Attorneys' Eyes Only" any Confidential Material that it reasonably and in good faith believes is of such a commercially or competitively sensitive nature that disclosure to persons other than those listed in paragraph 12 could reasonably be expected to result in injury.

c.    **"Confidential−Outside Counsel Only" Designation.** A Party may designate as "Confidential−Outside Counsel Only" any Confidential Material that it reasonably and in good faith believes is of such a commercially or competitively sensitive nature that disclosure to persons other than those listed in paragraph 13 could reasonably be expected to result in injury.

4.    **Confidential Health Information.** The Parties desire to ensure the privacy of patient/insured/member medical records, patient/insured/member claims information, and other information that the Parties have determined might contain

4

sensitive personal health information ("Confidential Health Information"). Confidential Health Information is intended to encompass any patient health information protected by any state or federal law, including, but not limited to, "Protected Health Information," as defined below, and agree that any Confidential Health Information shall be deemed "Confidential" and any such information concerning a third party shall be deemed "Confidential—Attorneys' Eyes Only" and, as such, subject to the terms of this Protective Order.

     a.    **Protected Health Information.** Protected Health Information, as used herein, has the same scope and definition as set forth in 45 C.F.R. §160.103. Without limiting the generality of the foregoing, Protected Health Information includes, but is not limited to, health information, including demographic information, relating to: the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual, which identifies or reasonably could be expected to identify the individual. It also includes, but is not limited to, medical bills, claims forms, charges sheets, medical records, medical charts, test results, notes, dictation, invoices, itemized billing statements, remittance advice forms, explanation of benefits, checks, notices, and requests, and includes all notes, summaries, compilations, extracts, abstracts or oral communications that are based on or

5

derived from Protected Health Information, regardless of form or format. Protected Health Information also includes information that contains the following identifiers of a patient/insured/member or of a relative, employer, or household member of a patient/insured/member:

    i.      names;

    ii.      all geographic subdivisions smaller than a State, including street address, city, county, precinct, and zip code;

    iii.      all elements of dates (except year) for dates directly related to an individual, including birth date, admission date, discharge date, age, and date of death;

    iv.      telephone numbers;

    v.      fax numbers;

    vi.      electronic mail addresses;

    vii.      social security numbers;

    viii.      medical record numbers;

    ix.      health plan beneficiary numbers;

    x.      account numbers;

    xi.      certificate/license numbers;

    xii.      vehicle identifiers and serial numbers, including license plate numbers;

xiii. device identifiers and serial numbers;

xiv. web universal resource locators ("URLs");

xv. internet protocol ("IP") address numbers;

xvi. biometric identifiers, including finger and voice prints;

xvii. full face photographic images and any comparable images;

xviii. any other unique identifying number, characteristic, or code; and

xix. any other information that the producing Party knows could be used alone or in combination with other information to identify an individual who is subject of the information.

"Confidential Health Information" does not include any document or information in which the producing Party has redacted the identifiers listed above and does not have actual knowledge that the information could be used alone or in combination with other information to identify an individual who is the subject of the information. A producing Party may, but is not required to, perform such redactions before producing documents that originally contained "Confidential Health Information" so long as the redactions do not result in prejudice to another Party.

     b.    **Safeguards for Confidential Health Information**. The Parties also seek to ensure that any person who receives and stores Confidential Health

Information in connection with this Proceeding will develop, implement, maintain, and use appropriate administrative, technical, and physical safeguards to preserve the privacy, integrity, and confidentiality of any Confidential Health Information, and to prevent unpermitted use or disclosure of any Confidential Health Information they may receive from any person in connection with this Proceeding. At a minimum, all Parties and persons or entities who might receive Confidential Health Information (including all signatories to Appendix A or B of this Order) agree that they will (1) comply with the Privacy and Security Rules; (2) establish contractual controls that require any vendors, experts, or third parties that might receive Confidential Health Information to comply with the Privacy and Security Rules; and (3) undertake due diligence to verify that the privacy and security protections of any such vendors, experts, or third parties comply with the Privacy and Security Rules. Confidential Health Information will be securely destroyed,[1] deleted, or returned pursuant to the provisions of paragraph 22 below.

**5. Document Production and Exhibits.**

    a. **Documents.** Documents containing Confidential Material, and any copies thereof, shall be designated as such by including a legend of

---

[1] "Secure destruction" means: "Securely overwriting or wiping data using a secure file deletion utility to ensure that the information cannot be recovered. For those devices that cannot be overwritten (*e.g.*, defective hard drives, CDs/DVDs), the device must be destroyed prior to disposal."

"Confidential," "Confidential—Attorneys' Eyes Only," or "Confidential—Outside Counsel Only" on each page as to which confidentiality is claimed. Said legend shall be made so as not to obscure any of the Confidential Material's content.

   b. **ESI.** With respect to any Confidential Material that is produced as electronically stored information ("ESI") and that is not susceptible to the imprinting of a stamp signifying its confidential nature, the producing Party may label the production media "Confidential," "Confidential--Attorneys' Eyes Only," or "Confidential--Outside Counsel Only" and/or alter the file name of the native ESI to include "Conf." or "Atty.Only" or "OutsideCounsel" and shall inform all recipients in writing of the designation at the time that Confidential Material is produced; otherwise, the ESI shall be marked with the legend as provided in paragraph 5(a) above. Whenever any ESI is reduced to a hard-copy document, such copy shall be marked with the legend as provided in paragraph 5(a) above.

   6. **Production or Disclosure of Information.** Any Party or third party may designate documents and ESI that is exchanged, whether in response to formal or informal requests, as "Confidential," "Confidential—Attorneys' Eyes Only," or "Confidential—Outside Counsel Only" by (a) including a statement that such information is "Confidential," "Confidential—Attorneys' Eyes Only," or "Confidential—Outside Counsel Only" in the answer or response or (b) designating such information as "Confidential," "Confidential—Attorneys' Eyes

Only," or "Confidential−Outside Counsel Only" thereafter as provided in this Protective Order. A legend of "Confidential," "Confidential−Attorneys' Eyes Only," or "Confidential—Outside Counsel Only" shall also be included on each page as to which confidentiality is claimed.

7. **Depositions.** A deposition or portion thereof may be designated as "Confidential," "Confidential−Attorneys' Eyes Only," or "Confidential—Outside Counsel Only" by making that designation on the record during the deposition or by denominating by page and line those portions of the deposition which are to be considered "Confidential," "Confidential−Attorneys' Eyes Only," or "Confidential—Outside Counsel Only" within forty-five (45) days of receiving the transcript and exhibits and so informing all Parties of the designation. Until the forty-five-day period has passed, the deposition transcript shall be treated as "Confidential—Attorneys' Eyes Only." If testimony is orally designated as "Confidential," "Confidential−Attorneys' Eyes Only," or "Confidential—Outside Counsel Only" during the course of a deposition, the court reporter shall transcribe the pages so designated in a separate volume marked "CONFIDENTIAL" or "CONFIDENTIAL−ATTORNEYS' EYES ONLY" or "CONFIDENTIAL— OUTSIDE COUNSEL ONLY." Any portion of a deposition so designated, or separately bound, shall not be filed with the court, except in accordance with paragraph 9 of this Protective Order. Notwithstanding the above, when notified to

10

do so, persons attending depositions, other than the witness and his or her outside counsel provided that the witness and his or her outside counsel have signed the appropriate Attachment to this Protective Order, must leave the room before any discussion of any Confidential Material, or any excerpts, summaries, or information derived therefrom, that the person is not entitled to review under this Protective Order.

8. **Documents Produced by Third-Parties.** With respect to any document or ESI or other material that is produced or disclosed by any third party without a designation of "Confidential," "Confidential−Attorneys' Eyes Only," or "Confidential—Outside Counsel Only," any Party may designate such material as Confidential Material within thirty (30) days of actual knowledge of the production or disclosure of the material, or such other time as may be agreed upon by the Parties.

a. Parties may designate such material by sending written notice of a designation to all other Parties in possession or custody of such previously undesignated material. The designating Party shall either provide the Bates number(s) of the material in the written notice or provide a copy of the designated material bearing the appropriate legend. Within thirty (30) days of receipt of such notice, or such other time as may be agreed upon by the Parties, any Parties receiving such notice or copy of the designated material pursuant to this

subparagraph shall return to the designating Party all undesignated copies of such material in their custody or possession, shall inform the designating Party that all undesignated copies of such material in their custody or possession have been discarded, or shall affix the legend to all copies of such designated material in their custody or possession.

b.     Upon notice of designation pursuant to this Paragraph, the Parties also shall: (i) make no further disclosure of such designated material or information contained therein, except as allowed under this Order; (ii) take reasonable steps to notify any persons who were provided copies of such designated material of the terms of this Order; and (iii) take reasonable steps to reclaim any such designated material in the possession of any person not permitted access to such information under the terms of this Order.

c.     No Party shall be deemed to have violated this Order for the sole reason that such material has been disclosed or used in a manner inconsistent with the subsequent designation, prior to notification of the subsequent designation.

9.     **Documents Generated During Suit.** All pleadings, motions, memoranda, briefs, deposition transcripts, discovery requests and responses, exhibits, and other documents that produce, quote, paraphrase, summarize, or otherwise contain information from Confidential Material, if filed with the court,

shall either be redacted from the court filing (either by redacting the relevant text of the submission or redacting the entirety of any exhibit that has been designated as Confidential Material) or may be filed under seal pursuant to the rules governing sealed documents, as set forth in CM/ECF procedures of the United States District Court for the Northern District of Alabama. No separate permission needs to be sought regarding the redaction of public filings or the filing of any such submissions under seal. Any Party shall have the right to seek a judicial determination, post-filing, of whether any Confidential Material should remain under seal, after following the process for challenging designations set forth in paragraph 16. Any courtesy copies served on the court shall be unredacted and complete, and shall be filed in an envelope labeled with the caption of the suit, a reference to the corresponding document number on file with the court, and marked "Filed Under Seal" along with the words "Confidential," "Confidential−Attorneys' Eyes Only," or "Confidential−Outside Counsel Only" and the following statement:

> "THIS ENVELOPE CONTAINS INFORMATION SUBJECT TO THE PROTECTIVE ORDER ENTERED BY THE COURT IN THIS LITIGATION."

10. **Restrictions on Use of Confidential Material.** Except as agreed by the designating Party or its counsel or as otherwise provided herein, Confidential Material, and any excerpts, summaries, or information derived therefrom:

      a.    shall be maintained in confidence;

      b.    may be disclosed only to persons entitled to access thereto under the terms of this Protective Order;

      c.    shall be used by such persons to whom it is disclosed only for the purposes of prosecuting or defending this Proceeding, including appeals, and for no other purpose; and

      d.    may be photocopied or otherwise reproduced only as reasonably necessary for this Proceeding; and

      e.    will be securely destroyed or returned at the conclusion of this Proceeding pursuant to the provisions of paragraph 22 below.

Nothing herein shall prevent disclosure beyond the terms of this Protective Order if the Party or third party designating the information as Confidential Material consents in writing to such disclosure of its designated material. Nothing herein prevents the use of Confidential Material, in the examination or cross-examination in this Proceeding of any person who is indicated on the documents as being an author, source, or bona fide recipient, or who is reasonably expected to possess knowledge of the information discussed in the document, or the designated

14

representative of any person who has been tendered to testify about matters of or concerning the Confidential Material designated "Confidential," irrespective of which Party or third party produced such information.

11.     **Authorized Users of "Confidential" Material.** Except as agreed in writing by the designating Party or as otherwise provided herein, information designated "Confidential" subject to this Protective Order, or extracts, summaries, or information derived therefrom, shall not be disclosed or shown to any person except the following:

a.      In-house counsel for any Party engaged in the litigation of this Proceeding and the employees and personnel who work with such attorneys to whom it is necessary that the material be shown for purposes of this Proceeding.

b.      Outside counsel for any Party engaged in the litigation of this Proceeding and the employees and personnel who work with such attorneys to whom it is necessary that the material be shown for purposes of this Proceeding. For purposes of this Proceeding, counsel of record for California Physicians' Service d/b/a Blue Shield of California shall be deemed outside counsel.

c.      Any individual Party, as well as employees or former employees of a corporate Party engaged in assisting that Party's attorneys in the conduct of this Proceeding, or a member of a putative Class who is a client of and actively engaged in assisting Plaintiffs' counsel, to the extent reasonably necessary

to enable the attorneys for that Party or client to render professional services in the Proceeding. Confidential Materials will not be disclosed to a former employee until that employee has signed and delivered to counsel for the Party that is the former employer a statement in the form annexed hereto as Attachment A. Confidential Materials will not be disclosed to an individual member of a putative Class or an individual representative of any corporate entity that is a member of a putative Class until that person has signed and delivered to counsel for the Plaintiffs a statement in the form annexed hereto as Attachment A.

        d.     An "Independent Expert," after such Independent Expert has signed and delivered to counsel for the Party who provided the Confidential Material to the Independent Expert a statement in the form annexed hereto as Attachment B. An Independent Expert means an individual expert and/or individual independent consultant retained or employed to advise or assist counsel in prosecuting or defending claims between the Parties. Any person who is currently an employee of a Party or any non-Party entity that is a provider of healthcare financing administration or insurance cannot be retained as an Independent Expert or continue to serve as an Independent Expert. In addition, an Independent Expert cannot, during the course of this litigation, (a) be involved in or provide advice concerning negotiations of a contract related to reimbursement for healthcare services between any hospital or healthcare system and a Defendant

16

opposite a Party whose Confidential Information the Independent Expert has reviewed, and which information is likely to provide an identifiable strategic advantage in contract negotiations, or (b) provide advice concerning product design, pricing and market penetration for any non-Party provider of healthcare financing administration or insurance; provided that these limitations on who can serve as an Independent Expert do not apply (i) to a person who is a consultant or independent contractor only in connection with litigation, disputes that may result in litigation, or matters that may involve government agencies; or (ii) to a person as to whom all Defendants agree to such retention.

To the extent that an expert serving as an Independent Expert during the course of this litigation ceases to meet the criteria for Independent Experts set forth in this paragraph, the expert can no longer serve in the capacity of an Independent Expert retained or employed to advise or assist counsel in prosecuting or defending claims between the Parties. Any person who was entitled to view confidential materials solely as an Independent Expert, notwithstanding the fact that he or she is no longer serving as an Independent Expert in this litigation, is still bound by the provisions (a) and (b) in paragraph 11(d) until the conclusion of this proceeding, or until four years after the Expert has last reviewed Confidential Materials, whichever is earlier. An Independent Expert, or a Party acting on his or her behalf, may seek relief from the court (or the Magistrate or Special Master if so Ordered)

from the provisions (a) and (b) of paragraph 11(d) at any time. In addition, before showing an Independent Expert certain Confidential Materials, a Party may seek a ruling that the specific Confidential Materials may be reviewed by the Independent Expert without making the Independent Expert in violation of the restrictions contained in provisions (a) and (b) of paragraph 11(d). A Party is entitled to seek this relief from the court without disclosing the identity of the Independent Expert to the Opposing Party(ies). The request should identify the specific Confidential Materials proposed to be reviewed and provide reasonable specificity about the role and expertise of the Independent Expert with respect to the limitations provided in provisions (a) and (b) of paragraph 11(d). All Parties will have the opportunity to oppose such a request; however, they will not be entitled to learn information about the identity of the Independent Expert prior to disclosure of such expert pursuant to the Federal Rules of Civil Procedure. The court or its appointed representative, if necessary to the disposition, may ask for, or receive, information about the proposed Independent Expert's identity *in camera*.

   e. A Party's outside service-providers and consultants regarding document and ESI processing, hosting, review, and production, which includes any e-Discovery consultants and trial consultants provided such persons have signed and delivered to counsel for the Party retaining the outside service-provider a statement in the form annexed hereto as Attachment A.

f.     A deponent who is the author, bona fide recipient, or is reasonably expected to possess knowledge of the information discussed in the document, but only in connection with the preparation for or during the course of a noticed deposition in this matter, and provided that the deponent has executed an appropriate agreement to be bound by this Protective Order. A deponent, by virtue of that status alone, shall not be entitled to access or view any Confidential Material that they cannot otherwise access or view under the other provisions of this Protective Order.

g.     A court reporter and videographer in connection with the course of a deposition in this matter, provided that such persons have signed the appropriate attachment(s) to this Protective Order.

h.     The court, other court officials (including court reporters), and the trier of fact pursuant to a sealing order.

12.     **Authorized Users of "Confidential−Attorneys' Eyes Only" Material.** Except as agreed in writing by the designating Party or as otherwise provided herein, no information that is designated "Confidential−Attorneys' Eyes Only" pursuant to this Protective Order, or extracts or summaries therefrom, shall be disclosed or shown to any person <u>except</u> those persons listed in paragraphs 11(a), (b), (d), (e), (f), (g) and (h).

19

13.    **Authorized Users of "Confidential−Outside Counsel Only" Material.** Except as agreed in writing by the designating Party or as otherwise provided herein, no "Confidential−Outside Counsel Only" Material subject to this Protective Order, or extracts or summaries therefrom, shall be disclosed or shown to any person except those persons listed in paragraphs 11(b), (d), (e), (f), (g) and (h). Nevertheless, upon a request from any Party, a designating Party may, at its own discretion, agree in writing to disclose or show its own designated "Confidential—Outside Counsel Only" material to the persons listed in paragraph 11(a).

14.    **Use of "Confidential−Attorneys' Eyes Only" Materials and "Confidential−Outside Counsel Only" Materials at Depositions.** With respect to deponents:

   a.    A deponent can only be shown "Confidential—Attorneys' Eyes Only" and/or "Confidential—Outside Counsel Only" materials during the preparation for or course of a deposition if the deponent is the author or bona fide recipient of the materials, or is reasonably expected to possess knowledge of the information discussed in the materials.

   b.    The restrictions on the use of "Confidential−Attorneys' Eyes Only" and/or "Confidential−Outside Counsel Only" Materials with a deponent do

20

not apply to use of a Party's own so-designated Materials with its directors, officers, employees or retained experts of that Party who are being deposed.

15. **Disclosure to Unauthorized Persons.** If counsel for a Party wishes to disclose Confidential Material subject to this Protective Order, or extracts, summaries, or information derived therefrom, to any person not designated in paragraphs 11-13 above, they must proceed in the following manner: the names of the person(s) to whom the Confidential Material is to be disclosed and a description of the Confidential Material to be disclosed to such person(s) shall be provided in writing to lead counsel for all Parties twenty-one (21) days in advance of disclosure to afford counsel an opportunity to object to disclosure. If no objection is made within the twenty-one (21) day period, disclosure to such named person(s) may be made after the expiration of the twenty-one (21) day period. If an objection is made within the twenty-one (21) day period, the Party proposing the disclosure must seek an order from the court to allow the proposed disclosure, and the Confidential Material shall not be disclosed pending a decision by the court on that motion, unless the objection is withdrawn. Any person who becomes authorized to receive Confidential Material pursuant to this paragraph (whether such authorization arises from the lack of an objection or from the court's ruling on a motion for disclosure) shall, prior to the receipt of Confidential Material, execute and deliver to the Party who produced or designated the Confidential Material a

statement in the form annexed hereto as Attachment A. Disclosures made to all persons to whom disclosures are permitted pursuant to this paragraph shall be made subject to and in accordance with the terms of this Protective Order. To the extent that a Party or their counsel receives a discovery request or subpoena in another case for Confidential Materials of any Party or third party, such Party shall notify counsel for the Party, third party, and/or designating party whose material is sought in writing within five (5) business days of the receipt of such request or subpoena or otherwise within a reasonable time that allows the Party or third party whose Confidential Material is sought to seek to protect it from disclosure. The Party subject to such discovery request or subpoena shall not produce or disclose the requested Confidential Materials absent the written consent of the Party or third party whose Confidential Material is sought or if a court of competent jurisdiction orders the production.

16. **Challenging Designation.** If any Party reasonably and in good faith believes that any Confidential Material has been misclassified under this Protective Order, is not properly subject to the confidentiality designation assigned to it, or should not be subject to this Protective Order, that Party must notify the designating Party or third party in writing and provide a description of the Confidential Material (to include a Bates number identifier for each individual item for which a designation challenge is made), and a concise statement of the basis for

the challenge as to each individual document or other item so-identified, which the objecting Party believes should be released from some or all of the constraints of this Protective Order, and serve copies of such notice to all other Parties and the producing third party if applicable. Counsel shall confer in good faith in an effort to resolve any dispute concerning such designation. To facilitate efficient discussions and encourage non-judicial resolution, Plaintiffs and Defendants shall identify "Liaison Counsel" for each side to assist with the coordination of all such meet and confers. If the objection cannot be resolved by agreement within thirty (30) days from the date of service of the written objection, any Party may move the court for a determination as to whether the designation is appropriate. The burden of establishing the appropriate level of confidentiality shall be on the Party making the designation. The protection of the Confidential Material afforded by the Protective Order shall continue as originally designated until the court issues an order on the motion.

17. **Use of Confidential Material at Trial.** Confidential Material, or extracts, summaries, or information derived therefrom, retain confidential status even if used in this Proceeding, including at trial. The Party using Confidential Material shall take all reasonable steps to maintain confidentiality of the Confidential Material during such use by redacting documents or testimony to the extent possible, requesting that the court seal any transcript or exhibits with respect

to the Proceeding, or moving for the sequestration of unauthorized persons. If Confidential Material has been marked as such because it contains Confidential Health Information, the Parties agree that, in lieu of the above procedures, the Party wishing to use the Confidential Material at any stage in this Proceeding, including in papers filed with the court, mediation, trial preparation, trial, and appeal, will properly redact the documents pursuant to the HIPAA de-identification standard set forth at 45 C.F.R. § 164.514(b)(2) and in accordance with paragraph 4(a) above, and a neutral, non-identifying patient indicator, consistent with 45 C.F.R. § 164.514(c), will be used to refer to the patient in the materials, documents, or information at issue.

18. **No Waiver.** Production pursuant to this Protective Order shall not be deemed a waiver of:

a. any Party's or third party's right to object to any discovery requests on any ground;

b. any Party's right to seek an order compelling discovery with respect to any discovery request;

c. any Party's right to object to the admission of any evidence on any ground in this Proceeding;

d. any Party's or third party's use and review of its own documents and its own Confidential Material in its sole and complete discretion; or

24

e.      the status of any material as a trade secret.

19.      **Responsibility of Counsel.** Counsel for the Parties to whom Confidential Material has been furnished shall be responsible for restricting disclosure in accordance with the provisions of this Protective Order and for securing execution of and retaining any executed version of the statement attached hereto as Attachment A when required under the provisions of this Protective Order.

20.      **Modification of Order.** This Order may be modified or amended either by written agreement of the Parties submitted to the court for approval or by order of the court upon good cause shown.

21.      **Third-Party Material.** To the extent that the Parties produce documents received from third-parties that have been designated by third-parties as Confidential Material, those documents shall be treated as Confidential Material in accordance with the terms of this Protective Order, and any testimony concerning the contents of those documents shall likewise be treated as Confidential Material in accordance with the terms of this Protective Order.

22.      **Conclusion of Proceeding.** The provisions of this Protective Order shall continue in effect with respect to any Confidential Material until expressly released by the Party or third party designating the Confidential Material, and if applicable, such effectiveness shall survive the final determination of this

Proceeding. Within ninety (90) days of the final determination of this Proceeding, including any appeal, all Confidential Material, including all hard and electronic copies, derivations, and summaries thereof, shall be either (a) returned to the disclosing Party or third party; or (b) securely destroyed or deleted, with a written certification of such secure destruction or deletion provided to the disclosing Party or third party. This includes the return or secure destruction or deletion of Confidential Material provided to any person, including Independent Experts. Confidential Material that may exist on any back-up media must also be returned or securely destroyed or deleted within ninety (90) days of the final determination of this Proceeding, including any appeal. Counsel of record are permitted to retain a copy of attorney work product, which may incorporate information from Confidential Material, provided that (1) all such retained attorney work product, and counsel's further retention or further use thereof, shall remain subject to the terms of this Order, and (2) counsel's retention of such attorney work product is in compliance with the Privacy and Security Rules (*e.g.*, does not contain any Protected Health Information). For the avoidance of doubt, such retention shall not include any Confidential Material itself (*e.g.*, produced documents and/or data designated as Confidential). For purposes of this Protective Order, the "final determination of this Proceeding" shall be deemed to be the latter of (i) full settlement of all claims; (ii) final judgment herein after the completion and

26

exhaustion of all appeals, re-hearings, remands, trials and reviews, if any, of this Proceeding (excluding any time period under which the court has supervision or oversight over any relief issued through a consent decree or any non-preliminary injunction issued by the court); or (iii) the expiration of all time limits under federal law for the filing of or application for all appeals, rehearings, remands, trials or reviews of this Proceeding, including the time limits for the filing of any motions or applications for extension of time pursuant to applicable law. Any time period under which the court has supervision or oversight over any relief issued through a consent decree or any non-preliminary injunction issued by the court will be considered after the conclusion of this proceeding.

23. **Time Period for Protection.** Any Confidential Material or any information contained in or derived from Confidential Material shall be subject to the provisions of this Protective Order until further Order of this court.

24. **Enforcement.** Upon the final resolution of this Proceeding, any Party may seek leave to reopen the Proceeding or request the court retain jurisdiction to enforce the provisions of this Protective Order.

**DONE** and **ORDERED** this February 23, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

# ATTACHMENT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406) | ) ) ) ) ) ) ) | **Master File** **No. 2:13-CV-20000-RDP** This document relates to all cases. |

## AGREEMENT TO BE BOUND BY QUALIFIED PROTECTIVE ORDER

1.      I am familiar with and agree to be bound by the terms of the Qualified Protective Order ("Protective Order") in No.: 2:13-CV-20000-RDP, Blue Cross Blue Shield Antitrust Litigation (MDL No.: 2406). I understand that my execution of this Agreement to Be Bound by the Protective Order indicates my agreement to be bound by the Protective Order and is a prerequisite to my access or review of any information or documents designated as Confidential Material pursuant to the Protective Order. I further understand that my execution of this Agreement indicates that I am a person who is allowed to access or review any information or documents designated as Confidential Material pursuant to the Protective Order.

2.      I will access and review Confidential Material that may be provided to me solely for the purpose of my role in assisting with prosecuting or defending this Proceeding, including mediation, trial preparation, trial, and appeal, and for no

other purpose whatsoever. I further agree that I will not disclose any Confidential Material to any person except as allowed by the terms of the Protective Order.

3.      I will only make such copies of or notes concerning Confidential Material as are necessary to enable me to render the assistance required in connection with this Proceeding. Upon the final determination of this Proceeding, I shall promptly and securely destroy or delete all Confidential Materials provided to me as well as any notes or derivations thereof. I understand that my obligation to honor the confidentiality of such material will continue even after this Proceeding concludes.

4.      I understand that all Confidential Health Information, as defined in the Protective Order, is subject to state and federal statutory and regulatory privacy and security standards, including, but not limited to, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Health Information Technology for Economic and Clinical Health Act of 2009 (the "HITECH Act"), and regulations adopted thereunder by the U.S. Department of Health and Human Services, 45 C.F.R. Parts 160, 162, and 164 (the "HIPAA Rules"). All Confidential Material disclosed by any Party or third party to this Proceeding that contains Confidential Health Information shall be treated in accordance with those standards, as applicable. Capitalized terms used, but not otherwise defined in this agreement, shall have the same meanings as those terms in HIPAA Rules.

5.      By executing this Agreement to Be Bound by Qualified Protective Order, I agree that I will not use or disclose any Confidential Health Information in a manner that would violate the HIPAA Rules and will only use or disclose any Confidential Health Information for the purpose of this Proceeding or to comply with judicial process or any applicable statute or regulation. I also agree that I will develop, implement, maintain, and use appropriate administrative, technical and physical safeguards to preserve the privacy, integrity, and confidentiality of any Confidential Health Information, and to prevent unpermitted use or disclosure of any Confidential Health Information I receive from any person in connection with this Proceeding.

6.      I understand that failure to comply with the terms of the Protective Order may be punishable by contempt of court and may result in civil liability to any party or person damaged thereby. I consent to the jurisdiction of the United States District Court for the Northern District of Alabama (without any time limit) for the purpose of enforcing the Protective Order.

DATED this ___ day of _____, 20__.

BY: _____

_____

(Print Name)

# ATTACHMENT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406) | ) ) ) ) ) ) ) **Master File No. 2:13-CV-20000-RDP** This document relates to all cases. |

## <u>AGREEMENT FOR INDEPENDENT EXPERTS TO BE BOUND BY QUALIFIED PROTECTIVE ORDER</u>

1.      I am familiar with and agree to be bound by the terms of the Qualified Protective Order ("Protective Order") in No.: 2:13-CV-20000-RDP, Blue Cross Blue Shield Antitrust Litigation (MDL No.: 2406). I understand that my execution of this Agreement to Be Bound by the Protective Order indicates my agreement to be bound by the Protective Order and is a prerequisite to my access or review of any information or documents designated as Confidential Material pursuant to the Protective Order. I further understand that my execution of this Agreement indicates that I am a person who is allowed to access or review any information or documents designated as Confidential Material pursuant to the Protective Order.

2.      I will access and review Confidential Material that may be provided to me solely for the purpose of my role in assisting with prosecuting or defending this Proceeding, including mediation, trial preparation, trial, and appeal, and for no

other purpose whatsoever. I further agree that I will not disclose any Confidential Material to any person except as allowed by the terms of the Protective Order.

3.      I will only make such copies of or notes concerning Confidential Material as are necessary to enable me to render the assistance required in connection with this litigation. Upon the final determination of this action, I shall promptly and securely destroy or delete all Confidential Materials provided to me as well as any notes or derivations thereof. I understand that my obligation to honor the confidentiality of such material will continue even after this Proceeding concludes.

4.      I will not use any Confidential Information or any information or knowledge derived from Confidential Information for any purpose unrelated to this Litigation, including, but not limited to, assisting any entity in any way in connection with any commercial or business endeavor, relationship or negotiation with any of the Defendants at any time or in connection with assisting any person or entity that seeks to compete with any Defendant in any market.

5.      I understand that all Confidential Health Information, as defined in the Protective Order, is subject to state and federal statutory and regulatory privacy and security standards, including, but not limited to, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Health Information Technology for Economic and Clinical Health Act of 2009 (the "HITECH Act"),

2

and regulations adopted thereunder by the U.S. Department of Health and Human Services, 45 C.F.R. Parts 160, 162, and 164 (the "HIPAA Rules"). All Confidential Material disclosed by any Party or non-party to this Proceeding that contains Confidential Health Information shall be treated in accordance with those standards, as applicable. Capitalized terms used, but not otherwise defined in this agreement, shall have the same meanings as those terms in HIPAA Rules.

6.      By executing this Agreement to Be Bound by Qualified Protective Order, I agree that I will not use or disclose any Confidential Health Information in a manner that would violate the HIPAA Rules and will only use or disclose any Confidential Health Information for the purpose of this Proceeding or to comply with judicial process or any applicable statute or regulation. I also agree that I will develop, implement, maintain, and use appropriate administrative, technical and physical safeguards to preserve the privacy, integrity, and confidentiality of any Confidential Health Information, and to prevent non-permitted use or disclosure of any Confidential Health Information I receive from any person in connection with this Proceeding.

7.      I have not been determined by a court or other competent tribunal to have violated the terms of a protective order in any other litigation.

8.      I understand that failure to comply with the terms of the Protective Order may be punishable by contempt of court and may result in civil liability to

3

any party or person damaged thereby. I consent to the jurisdiction of the United States District Court for the Northern District of Alabama (without any time limit) for the purpose of enforcing the Protective Order.

DATED this ___ day of _____, 20__.

BY: _____

_____

(Print Name)

4

# Exhibit 2

FILED

2015 Apr-16 PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No.: 2406) | ) ) ) ) ) ) ) ) ) ) | **Master File No.: 2:13-CV-20000-RDP**<br><br>This document relates to all cases. |

---

## CASE MANAGEMENT AND DISCOVERY ORDER No. 7: PROTOCOL RELATING TO THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI")

Pursuant to the agreement reached between Plaintiffs and Defendants[1] herein, this Court adopts and orders the following Protocol relating to the Production[2] of documents and electronically stored information (collectively "Discoverable Information") in these Proceedings.[3]

---

[1] Those defendants who have filed motions to dismiss for lack of personal jurisdiction and improper venue, including Blue Cross Blue Shield of Arizona, Blue Cross and Blue Shield of Kansas, Inc., Blue Cross Blue Shield of North Dakota, Blue Cross Blue Shield of Wyoming, HealthNow New York Inc., BlueShield of Northeastern New York, BlueCross BlueShield of Western New York, Capital BlueCross, Triple S Salud, Inc., Blue Cross Blue Shield of Mississippi, a Mutual Insurance Company, Blue Cross of Northeastern Pennsylvania, and Excellus Health Plan, Inc. d/b/a Excellus BlueCross Blue Shield, do not waive their position that this Court lacks personal jurisdiction over them and that venue is improper, and that plaintiffs should be required to file proper complaints against them in their home jurisdictions before proceeding.

[2] "Production" or "Produced" includes any exchange of documents or electronically stored information between the Parties, whether voluntarily or in response to a formal or informal request.

[3] "Proceedings" refers to the above styled actions and any appeal therefrom.

# I. Scope

a. <u>General</u>.  The procedures and protocols outlined herein govern the Production of Discoverable Information by all parties to these Proceedings, whether they currently are involved or become so in the future (collectively, the "Parties"[4]).  The Parties will take reasonable steps to comply with this agreed-upon protocol for the Production of Discoverable Information ("Protocol").  All Productions made pursuant to this Protocol are subject to the Protective Order entered by the Court on December 17, 2013 ("Protective Order"), the Protective Order under Fed. R. Evid. 502(d) Regarding Disclosure of Privileged Discoverable Information entered by the Court on November 8, 2013 ("502(d) Order"), and any further protective orders or privilege orders entered in these Proceedings.

b. <u>Objective</u>.  The Parties intend this Protocol to be interpreted such that, subject to any objections by the Party producing Discoverable Information ("Producing Party"), responsive, non-Privileged[5] Discoverable Information is produced while unnecessary costs associated with Production are minimized.  Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or a Party requesting Discoverable

---

[4]     "Parties" collectively shall mean all named parties to any action in these Proceedings, including any named Party added or joined to any complaint in these Proceedings, as well as named parties to tag-along actions that may be added to these Proceedings by the Judicial Panel on Multi-District Litigation.

[5]     As used in this Protocol, "Privilege" or "Privileged" refers broadly to the attorney-client privilege, the work product protection, or any other legal privilege or protection against disclosure of discovery that may be asserted by a Party.

Information ("Requesting Party").  To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

c.  <u>Limitations and Non-Waiver</u>.    Production of Discoverable Information is subject to the terms of the 502(d) Order entered by the Court.  The Parties and their attorneys intend by this Protocol to make the mutual disclosures promised herein.  The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and the work product doctrine.  All Parties preserve their attorney-client privileges, work product protection, and other privileges, and there is no intent by the Protocol, or Production pursuant to the Protocol, to waive these privileges or protections.  The Parties and their attorneys are not waiving and specifically reserve the right to object to any discovery requests on any grounds.  All documents produced hereunder are fully protected and covered by any protective orders or privilege orders entered by the Court in these Proceedings.

d.  <u>Variation</u>.  In light of the disparate data systems and architectures employed by various Parties, variations from this Protocol may be required.  In the event that any Party identifies a circumstance where application of this Protocol is not technologically possible, would be unduly burdensome or impractical, or when another process would satisfy the objective and reach the same result with less

burden, the Party will notify the Requesting Party of the exception and before implementing an alternative, specify an alternative procedure that is not unduly burdensome or impractical that will be employed, if one exists.  Upon request by the Requesting Party, those Parties will meet and confer regarding the circumstances and proposed alternative approaches.

## II.    Identification of Responsive Documents and ESI

a.  Sources of Discoverable Information.  The Parties have exchanged on a rolling basis certain information regarding Sources of Discoverable Information beginning on March 6, 2014.  (*See* Protocol for Data Systems Disclosures by All Parties.)  The Parties continue to engage in staged discovery based on these disclosures pursuant to Discovery Order No. 1, Dkt. No. 229.  Disputes over sources of discoverable information shall be resolved pursuant to that order.

b.  Search Methodologies for Unstructured Data.  The Parties recognize and agree that each party will use one or more search methodologies to collect, review and produce relevant and responsive, non-privileged documents and ESI in response to Rule 34 Requests for Production that require the collection, review and production of unstructured data ("Unstructured Production Requests").  The meet and confer process will proceed in two steps:

(i) The first step involves the following: (i) for search terms, initial general identification of search methodolog(y)(ies) a Producing Party

4

intends to use to identify relevant and responsive, non-privileged documents and ESI in response to Unstructured Production Requests and a general description of the data sources (including approximate volume) that will be subject to the methodolog(y)(ies); (ii) for technology-assisted review ("TAR"), disclosure of information pursuant to Section II(d)(i)(1-2) below.   Any objection to the identified search methodologies will be raised within a reasonable period of time by the Requesting Party after Step 1 disclosures.

(ii) The second step will consist of follow-up discussions regarding the proposed application of search methodologies including (i) for search terms, disclosures of information pursuant to Section II(c)(i)(1-6) below; (ii) for TAR, disclosure of information pursuant to Section II(d)(i)(3-5) below as well as a discussion of the TAR protocol to be used with the selected tool.  Any objection to the proposed application of search methodologies will be raised within a reasonable period of time by the Requesting Party after Step 2 disclosures.

Producing Party-specific meet and confers regarding search methodologies shall commence with regard to a given Producing Party after that Producing Party identifies the intended search methodology or methodologies that it will use to identify relevant and responsive, non-privileged documents and ESI in response to

Unstructured Production Requests.  Absent agreement or order of the Court, Producing Party-specific search methodology meet and confer sessions will conclude for a given Producing Party no later than 45 days after the above identification by the Producing Party.  Within five days after the conclusion of the search methodology meet and confer sessions, where the Parties mutually agree on the search methodology and validation processes to be used, the Producing Party will memorialize that understanding in writing and may proceed with using the search terms and/or TAR Tool (as defined in Section II(d) for review and productions, subject to any agreements made with the Requesting Party or any order of the Court.  Where the Requesting Party has an objection regarding a chosen search methodology or validation process, the Requesting Party must raise it with the Court pursuant to Discovery Order No. 1, Dkt. No. 229 within fifteen days after the conclusion of the meet and confer sessions.

      c. <u>Use of Search Terms</u>.  The Parties may use search terms and other limiters, including by way of example only, date ranges and e-mail domains in metadata fields, as a means of limiting the volume of information to be reviewed for responsiveness.  Queries may be run against information collected from Party-identified custodians after such information has been culled in accordance with Section II(f) below.  The information retrieved by the queries and the family members for such retrieved information define the universe of potentially

responsive materials that the Producing Party may then analyze for responsiveness and privilege. Responsive, non-Privileged Discoverable Information will be produced subject to the Producing Party's objections as to the discoverability or admissibility of any Discoverable Information and any agreements reached in the Parties' meet-and-confer process.

     i.   <u>Defining Search Terms</u>. To the extent a Party intends to use search terms, the Party will notify the Requesting Party of its intent to use search terms and disclose the following to the Requesting Party:

1. An initial list of the search terms the Producing Party intends to use;

2. Whether the Producing Party has made a reasonable inquiry of client employees to identify relevant terminology, including nicknames, code words, euphemisms, acronyms, slang, terms of art, and other language likely to be contained in responsive documents;

3. Whether the Producing Party has tested variations of its proposed search terms, for example, using wildcard characters, truncation, stem words, fuzzy logic and proximity terms to make the search more inclusive;

4. Whether the Producing Party intends to use different search terms with different custodians or data sets;

5. Whether the Producing Party has tested or will test its proposed search terms to identify false negatives, or used other validation methods; and

6. The reasoning behind rejecting a search term proposed by a Requesting Party, including any validation results relied upon by a Producing Party to reject a proposed search term.

ii. Upon receipt of the search terms and disclosures set forth above, if the Requesting Party has any additions or modifications to the search terms, it must raise them with the Producing Party within twenty-one days of receiving the initial list, and may then request a meet and confer to discuss a mutually agreeable list of search terms. To the extent a Producing Party does not agree to a search term proposed by a Requesting Party, the Producing Party will suggest alternative search terms, testing or validation methods, or provide a good faith explanation for its refusal to use the search term proposed by the Requesting Party. The Parties may then meet and confer regarding the appropriateness of the proposed search

term and, where applicable, information regarding the impact of the proposed search term. However, nothing in this Protocol will be interpreted to require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. The Parties acknowledge that different search terms may be necessary for different Parties. If the Parties are unable to agree on search terms after meeting and conferring in good faith, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution from the Court.

iii. A Party need not conduct any additional review of Discoverable Information subjected to, but not retrieved by, such queries; however, this limitation shall not excuse a Party from compliance with Fed. R. Civ. P. 26(g).

d. Alternative Methods to Identify Responsive Discoverable Information. In addition to, or in lieu of, search terms and other limiters described in Section II(c) above, to the extent a Party intends to use technology-assisted review or similar technologies (e.g., predictive coding or advanced analytics) ("TAR Tool") as a means of including or excluding documents to be reviewed for responsiveness or of culling or otherwise limiting the volume of information to be

reviewed for responsiveness, the Producing Party will disclose the following information:

i. Defining Alternative Methods to Identify Responsive Discoverable Information.  To the extent a Party elects to use a TAR Tool as a means of including or excluding documents to be reviewed for responsiveness or of culling or otherwise limiting the volume of information to be reviewed for responsiveness, the Producing Party will notify the Requesting Party of its intent to use a TAR Tool and disclose the following to the Requesting Party:

1. The TAR Tool: The vendor and a description of the TAR Tool being used; whether an active learning component exists; and, if applicable, the TAR Tool's procedure for iterative refinements after the initial training session, whether done sequentially or automatically.

2. Corpus: A description of the body of documents from which samples will be drawn, including the approximate volume and types of documents.

3. Culling: Whether culling techniques will be used, and, if so, information describing the type of filters to be used,

the data stores to be included, or any keywords to be used.

4. Control set: Whether a control set will be used and, if so, any non-privileged/non-attorney work product protected parameters for deriving the control set, the size of the control set, and the confidence levels or intervals used to derive the control set.

5. TAR Metrics: Whether validation exercises will be conducted and, if so, any non-privileged/non-attorney work product protected parameters for deriving the validation sample set (including the confidence levels or intervals used to derive the validation sample set), the size of the validation sample set, and recall statistics (or a reasonable substitute). The Parties will meet and confer regarding the timing of these disclosures.

ii. Subject to Section II(b)(ii), additional disclosure of information relating to the TAR Tool being used beyond that outlined in subsections (1)-(5) of Section II(d)(i) above will be required only upon good cause.

iii. The Parties acknowledge that the need for and provisions of a TAR Tool protocol may be different for different Parties. If the Parties are unable to agree on a protocol for the use of such technology after meeting and conferring in good faith, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution from the Court.

iv. A Party need not conduct any additional review of Discoverable Information subjected to, but not retrieved by, a TAR Tool as part of the identification of the subset of information that will be subject to review and production. This limitation shall not excuse a Party from compliance with Fed. R. Civ. P. 26(g).

v. Nothing in this Protocol will be interpreted to require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

e. <u>Reassessment</u>. After the completion of the search methodology meet and confer sessions, the Producing Party may encounter the need to reassess a search methodology and/or validation process and, in such case, the Producing Party should notify the Requesting Party and the parties should meet and confer to address any issues in a reasonable and timely manner.

f. <u>Filtering</u>.

i. <u>De-duplication</u>. A Producing Party shall use commercially reasonable efforts to globally de-duplicate identical ESI within their own productions only, and to the extent reasonably feasible, will comply with the following:

1. <u>Electronic Documents</u>. Duplicate electronic documents shall be identified based upon a commercially accepted method (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The Producing Party shall produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable.

2. <u>Email Files</u>. Duplicate messaging files shall be identified based upon a commercially accepted method (e.g., MD5 hash values) for the email family, which include the parent email and attachments. Duplicate messaging materials will be identified at a family level, including message and attachment(s). Email families bearing an identical value are considered a duplicate group. The

Producing Party shall produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

ii.  Email Threading.  The Parties may use "email thread suppression." To the extent a Party uses email thread suppression, the Party will make reasonable efforts to produce a unique thread identifier for each thread, which will correlate two emails that have been identified to be part of the same thread, but that do not meet the criteria described in this paragraph of having a derivative email that fully represents a previous email. As used in this Protocol, email thread suppression means reducing duplicative production of email threads by producing the most inclusive email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting duplicates of emails within the produced string.  For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.  Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.

  iii. <u>De-NISTing</u>. Electronic file collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

  iv. <u>Zero-byte Files</u>. The Parties shall filter out stand-alone files identified as zero-bytes in size.

  v. <u>Date</u>. The Parties may limit processing of Discoverable Information to that which was created, modified, sent, or received between certain dates as agreed by the Parties, or set forth by the Court.

  vi. The Parties will meet and confer about any additional filtering techniques.

## III. Production Format

 a. <u>TIFF/Native File Format Production</u>. Except for structured data, the default production format will be black-and-white Group IV single-page TIFF (300 DPI) with corresponding multi-page text and necessary load files. The load files will include an image load file as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. However, documents maintained in spreadsheets (e.g., Lotus 1-2-3, Microsoft Excel) and presentation formats (e.g., Microsoft PowerPoint) shall be produced in their native form with a placeholder TIFF image stating "Document Produced Natively,"

unless such documents contain redactions, in which case the documents will be produced in TIFF format. Other documents that are difficult to TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native form with a placeholder TIFF image stating "Document Produced Natively," unless such documents contain redactions, in which case the documents will be produced in TIFF format. A Producing Party retains the option to produce ESI in alternative formats if so agreed by the Receiving Party, which may include native format, or a combination of native and TIFF formats.

b. <u>Numbering/Endorsement</u>. All produced Discoverable Information will have a unique Control ID assigned, regardless of the format of the Discoverable Information. The Control ID will be generated so as to identify the Producing Party. For Discoverable Information produced in TIFF image format, each TIFF image will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate or obscure any information from the source document. A Producing Party should be consistent in the Bates Number prefixes it uses across its productions. In the case of materials deemed confidential in accordance with any applicable federal, state, or common law, or any protective order or confidentiality stipulation entered into by the Parties, a confidentiality designation may be "burned" onto the document's

image at a location that does not obliterate or obscure any information from the source document. The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

c. <u>Metadata</u>. No Party has an obligation to create or manually code metadata fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the electronic document. For email, the Parties shall provide all applicable email metadata fields outlined in Appendix A hereto and associated with each document produced, to the extent they are reasonably available from the source of collection. For non-email electronic documents (such as Microsoft Word), the Parties shall provide all applicable non-email ESI metadata fields outlined in Appendix A hereto and associated with each electronic document produced, to the extent they are reasonably available from the source of collection. For hard copy documents that are produced by a Party (as opposed to being made available for inspection), the Parties shall provide all applicable metadata fields associated with hard copy outlined in Appendix A hereto for each document produced to the extent they are reasonably available.

d. <u>Native Files</u>. The Parties agree that Discoverable Information may be produced in the imaged format set forth in Section III(a) hereto. Subsequent to the Production of Discoverable Information, however, the Requesting Party may, on a

showing of particularized need, request from the Producing Party that certain imaged files be produced in native format according to the following protocol:

     i.   The Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format. The Requesting Party also shall provide the reasons for the request.

    ii.   The Producing Party shall produce the native files, or it may object to the demand as unreasonable as follows:

         1.   The Producing Party will respond in writing, setting forth its objection(s) to the production of the requested native format files.

         2.   The Parties will meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of the requested files in native format, the Parties shall submit the matter to the Court.

    e.  <u>Variations to Production Format</u>.  In certain circumstances, variations to the Production Format specified in this Protocol may be necessary. In such circumstances, the Parties will meet and confer regarding the Production Format.

     f.  <u>Foreign Language</u>.  The Parties may potentially produce Discoverable Information drafted in one or more languages.  The Parties shall produce all foreign language Discoverable Information in the original language.

     g.  <u>Appearance</u>.  Subject to appropriate redaction, each image Produced will convey the same text as the original document.  Produced images will be produced in black and white in the format specified in III(a) hereto.  After Production, a Party may request that a Produced image be produced in color at which time the Parties may meet and confer about such production.  Color images should be provided in 300 DPI JPEG format when color is necessary.  If a Party's Discoverable Information presents significant imaging or formatting challenges, the Party will identify the problem(s) in writing and the Parties will meet and confer in an attempt to resolve the issue.

     h.  <u>Password-protected files</u>.  The Producing Party will make reasonable efforts to open and access password-protected files that are identified during processing.

     i.  <u>Claims of Confidentiality</u>.  If the Producing Party produces Discoverable Information subject to a claim that it is protected from disclosure under the Protective Order, the 502(d) Order, or any other protective order or confidentiality order entered by the Court, the Producing Party shall follow the procedures set forth in the protective order or confidentiality order.  Failure to

comply with the procedures set forth in the protective order or confidentiality order shall not waive any protection or confidential treatment.

j.  <u>Production Media</u>.  The Producing Party may Produce documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media as the Parties may agree upon, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), pursuant to any agreed on Document Production Protocol.  All Production Media will be encrypted and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.  Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production. For example, if the production comprises document images on three DVDs, the Producing Party may label each DVD in the following manner: "BCBSA Production September 1, 2014-001", "BCBSA Production September 1, 2014-002", "BCBSA Production September 1, 2014-003." Additional information that will be identified on the physical Production Media includes: (1) text referencing that it was produced in *In re Blue Cross Blue Shield Antitrust Litigation*, and (2) the Bates Number range of the materials contained on the Production Media. Further, any replacement Production Media will cross-reference the original

Production Media and clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

### IV.  Assertions of Privilege

a.  <u>Privileged Material</u>.   The Parties agree that isolation, review, redaction, and logging of Privileged Discoverable Information can be costly and time-consuming.  To limit the cost of a privilege review and make the Production of Discoverable Information more efficient, the Parties have agreed to adopt the following protocol with respect to handling Privileged Discoverable Information.

b.  <u>Production Without Privilege Review</u>.  Pursuant to the 502(d) Order, a Party may produce documents without conducting any privilege review.

c.  <u>Privilege Logs</u>.  Each Party shall use good faith efforts in determining the reasonable technology and processes to search for and log Privileged Discoverable Information.  Privileged Discoverable Information identified with the aid of technological tools or processes need not be reviewed before it is entered on any privilege log and is withheld from Production.

      **i.**  Each Party may choose to identify Privileged Discoverable Information by category, provided that sufficient information is afforded to discern the nature of the claim for withholding production and the scope of the Privileged Discoverable Information withheld.

21

**ii.** No Party is required to list on a privilege log:

    1. Any communications exclusively between a Party and its in-house counsel principally involved in litigation matters pursuant to Section IV(c)(ii)(1)(a) below, outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts.

        a. To the extent a Party excludes from a privilege log any communications exclusively between a Party and its in-house counsel principally involved in litigation matters, the Party will disclose to the Requesting Party:

            i. the name of the in-house counsel excluded from the privilege log, the in-house counsel's job title to the extent reasonably available, and a brief description of the excluded in-house counsel's role in litigation matters corresponding to the time period of the unlogged communication(s); and

  ii. to the extent technological filters are used to identify in-house counsel communications that may be excluded from privilege review, any search terms to be applied to identify in-house counsel communications that may be excluded from privilege review, and any efforts to be used to identify in-house counsel communications containing such search term hits only in automatically-generated language (e.g., disclaimers automatically inserted as email footers).

b. Within twenty-one days after receiving the disclosures provided in Section IV(c)(ii)(1)(a), a Requesting Party may request further meet and confers regarding an in-house counsel's role in litigation matters corresponding to the time period of the unlogged communication(s).

c. If after the initial meet and confer sessions a Requesting Party objects to the designation of a particular in-house counsel principally involved in

litigation matters for exclusion from privilege log requirements, the Parties will further meet and confer to determine whether: (i) the Parties can agree to defer the logging of any communications exclusively between a Party and the identified in-house counsel to a later date certain to allow the possibility that additional information may resolve the issue, or (ii) the Parties can agree on a time frame and/or subject matter limitations regarding the communications exclusively between a Party and the identified in-house counsel that would be identified on a privilege log.

d. Should a Requesting Party, after the Parties' meet and confer sessions, in good faith have reason to believe that privilege logging is necessary, the Producing Party will provide a privilege log pursuant to Sections IV(c)(i), (iii), (iv) and/or (v).

2. Any privileged materials or work product created or received by a Party's in-house counsel principally involved in litigation matters pursuant to Section

IV.c.ii.2.a below, outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or, with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts. This provision extends to the attachments of privileged or work product emails.

    a. To the extent a Party excludes from a privilege log any privileged materials or work product by its in-house counsel principally involved in litigation matters, the Party will disclose to the Requesting Party:

        i. the name of the in-house counsel excluded from the privilege log, the in-house counsel's job title to the extent reasonably available, and a brief description of the excluded in-house counsel's role in litigation matters corresponding to the time period of the unlogged privileged materials or work product; and

        ii. to the extent technological filters are used to identify privileged materials or work

product by a Party's in-house counsel that may be excluded from privilege review, any search terms to be applied to identify privileged materials or work product by its in-house counsel that may be excluded from privilege review, and any efforts to be used to identify privileged materials or work product by its in-house counsel containing such search term hits only in automatically-generated language (e.g., disclaimers automatically inserted as email footers).

b. Within twenty-one days after receiving the disclosures provided in Section IV(c)(ii)(2)(a), a Requesting Party may request further meet and confers regarding an in-house counsel's role in litigation matters corresponding to the time period of the unlogged privileged materials or work product.

c. If after the initial meet and confer sessions a Requesting Party objects to the designation of a

particular in-house counsel principally involved in litigation matters for exclusion from privilege log requirements, the parties will further meet and confer to determine whether: (i) the parties can agree to defer the logging of privileged materials or work product created or received by the identified in-house counsel to a later date certain to allow the possibility that additional information may resolve the issue, or (ii) the parties can agree on a time frame and/or subject matter limitations regarding privileged materials or work product created or received by the identified in-house counsel that would be identified in a privilege log.

d. Should a Requesting Party, after the parties' meet and confer sessions, in good faith have reason to believe that privilege logging is necessary, the Producing Party will provide a privilege log pursuant to Sections IV(c)(i), (iii) (iv) and/or (v).

iii. If a Producing Party identifies portions of Discoverable Information that are Privileged and redacts such portions of the

27

Discoverable Information on that basis, the Producing Party must log the fact of redaction, provided however that a Party need not provide a log entry where the face of the redacted Discoverable Information provides the information that otherwise would appear on a log.

iv. To the extent applicable, each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

    1. Objective metadata includes the following (as applicable to the document types as shown in Appendix A):

        a. A unique privilege log identifier

        b. AllCustodian

        c. File Name

        d. Email Subject

        e. Author

        f. From

        g. To

        h. CC

        i. BCC

        j.   Date Sent

        k.   Date Received

        l.   Date Created

2.   With respect to the "Email Subject" or "File Name" field, the Producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. In the Privilege Log(s), the Producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field.

**v.**   Should a Receiving Party, in good faith, have reason to believe a particular entry on a metadata-generated privilege log is responsive and does not reflect Privileged Discoverable Information, the Receiving Party may request and the Producing Party will generate a privilege log for that entry in compliance with Fed. R. Civ. P. 26(b)(5).

d.  <u>Non-Waiver</u>.  Pursuant to the clawback provisions of the 502(d) Order, the Parties will not make an argument that a Privilege was waived with respect to Discoverable Information Produced either directly or through a Privilege Log. In addition, the Privilege protecting any communications that are

29

subsequently distributed internally to a Party's employee(s) will not be destroyed by such distribution.   The Parties agree that no affidavit or other evidence is required to prove that the Privilege extends to internally distributed communications.

    **i.**   <u>Time for Asserting Privilege</u>.   A Producing Party may assert a Privilege at any time, subject to the Parties' 502(d) Order.

    **ii.**   <u>Disputing Claims of Privilege over Produced Documents</u>.   Upon receipt of notice of the assertion of a Privilege over Produced Discoverable Information, the Requesting Party shall either:

    1.  to the extent it contests the Privilege asserted, promptly so notify the Producing Party, and sequester the contested Discoverable Information.   The Parties shall meet and confer to attempt to resolve the disagreement regarding the Privilege.   If the Parties are unable to resolve the disagreement after meeting and conferring in good faith, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution from the Court; or

    2.  to the extent it does not contest the Privilege asserted, promptly certify in writing to the Producing Party that it has returned or made reasonably diligent efforts to

identify and destroy each copy of the Privileged Discoverable Information, including all information derived therefrom.

## V. General Provisions

a. <u>Discoverability and Admissibility</u>. Nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information. All objections to the discoverability or admissibility of any Discoverable Information are preserved and may be asserted at any time.

b. <u>Modification</u>. Any practice or procedure set forth herein may be varied by agreement of Plaintiffs and all affected Defendants, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Discoverable Information. Any Party, including any Party in a case transferred to this MDL after the date of this Protocol, that seeks to deviate from or exceed the discovery parameters set forth herein, must obtain leave of Court to do so unless all Plaintiffs and all affected Defendants otherwise consent in writing. Before seeking Court intervention, all Plaintiffs and all affected Defendants shall meet and confer in good faith regarding any modification.

**DONE** and **ORDERED** this the 16th day of April, 2015.


T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

## APPENDIX A: REQUIRED METADATA FIELDS

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| Bates Number Begin | Beginning page Bates number | x | x | x |
| Bates Number End | Ending page Bates number | x | x | x |
| Attachment Range | Beginning and ending attachment range pages | x | x | |
| Attachment Begin | Beginning page of attachment range | x | x | |
| Attachment End | Ending page of attachment range | x | x | |
| Attachment Count | Number of attachments to an email | x | x | |
| Family Range | Beginning page of parent document and ending page of attachment range | x | x | |
| AllCustodian | Production custodians or non-human production data sources associated with the produced document. | x | x | x |
| File Path | File path of document or container file containing document | | x | |
| File Name | File name of | | x | |

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| | document | | | |
| File Extension | File extension of document | | x | |
| Email Outlook Type | Type of Outlook item, e.g. email, calendar item, note, task | x | | |
| File Size | File size in bytes | x | x | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| Email Folder | Email folder path | x | | |
| Email Subject | Subject of email | x | x | |
| Author | Document author | | x | |
| From | Email author | x | x | |
| To | Email recipients | x | x | |
| CC | Email copyees | x | x | |
| BCC | Email blind copyees | x | x | |
| Importance | Email importance flag | x | x | |
| Date Sent | Date sent in Eastern Standard Time (EST) | x | x | |
| Time Sent | Time sent in | x | x | |

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| | Eastern Standard Time (EST) | | | |
| Date Received | Date received in Eastern Standard Time (EST) | x | x | |
| Time Received | Time received in Eastern Standard Time (EST) | x | x | |
| Date Created | Date created in Eastern Standard Time (EST) | | x | |
| Date Modified | Date modified in Eastern Standard Time (EST) | | x | |
| Hash Value (MD5 or SHA-1) | Unique electronic signature of email or electronic file | x | x | |
| Email Thread Family ID | Unique identifier from email threading algorithm to denote emails from a single thread and all attachments | x | x | |
| Password Protection/ Encryption | Descriptor for documents that are password-protected or encrypted (<yes> or <no>) | x | x | |
| Production Volume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation | x | x | x |

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| | pursuant to the Protective Order. | | | |
| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) | x | x | x |

**UNITED STATES DISTRICT COURT**
**For the District of Columbia**

| | |
|---|---|
| In re:  Blue Cross Blue | Civil Action Docket No._____ |
| Shield Antitrust Litigation | (Matter pending in N.D. Ala. under Docket No. 2:13-CV-20000-RDP) |
| (MDL No. 2406) | |

**Exhibit B to**

**Declaration of David Newman in Support of**
**Health Care Cost Institute, Inc.'s Motion to Quash Subpoena**

## PIERCE ATWOOD LLP

**ERIC J. WYCOFF**

Merrill's Wharf
254 Commercial Street
Portland, ME  04101

**P** 207.791.1221
**F** 207.791.1350
ewycoff@pierceatwood.com
pierceatwood.com

Admitted in: DC, ME

**Via Email and Overnight Delivery**

August 9, 2016

Patrick J. Sheehan, Esq.
psheehan@whatleykallas.com
Whatley Kallas, LLP
60 State Street
Boson, MA  02109

Re:   *In re Blue Cross Blue Shield Antitrust Litigation*
        MDL NO. 2406, Case No. 2:13-cv-20000-RDP (N.D. Ala.)

Dear Patrick:

On behalf of my client, Health Care Cost Institute, Inc. ("HCCI"), please find its Objections to Subpoena Served by Provider Plaintiffs.

If you have any questions, please feel free to contact me.

Very truly yours,

Eric J. Wycoff

EJW/mlc

Enclosure

UNITED STATES DISTRICT COURT
for the Northern District of Alabama

In re:  Blue Cross Blue

Shield Antitrust Litigation                    Master File No. 2:13-CV-20000-RDP

(MDL No. 2406)

### OBJECTIONS OF THIRD-PARTY,
### HEALTH CARE COST INSTITUTE, INC., TO
### <u>SUBPOENA SERVED BY PROVIDER PLAINTIFFS</u>

Third Party, Health Care Cost Institute, Inc. ("HCCI"), hereby objects to the Subpoena to

Produce Documents, Information, or Objects served by the Provider Plaintiffs, dated July 26,

2016 (the "Subpoena"), as follows:

### <u>GENERAL OBJECTIONS TO SUBPOENA</u>

HCCI incorporates the following general objections to the Subpoena into its objections to

specific requests, below, as if fully stated therein:

1.      HCCI objects to the Subpoena on the ground that it is overly broad, unduly

burdensome, and disproportionate to the needs of this case.

2.      HCCI objects to the Subpoena in that it seeks documents which are protected

from disclosure by applicable State or Federal statute, including the Health Insurance Portability

and Accountability Act HIPAA.

3.      HCCI has entered into certain agreements with certain data contributors, whereby

they have agreed to provide health care cost and utilization data that has been de-identified in

accordance with 45 C.F.F. § 164.514(b), for the purpose of making the data available to

researchers, as licensees, trying to understand the factors influencing health care costs as part of

HCCI's non-profit mission of making the data available to researchers.  As a result of the

{W5675337.1}                                   1

agreements it has concluded, HCCI has accumulated an unprecedented amount of health care

cost and utilization data which has previously been unavailable to researchers. The information

provided to HCCI has been defined as confidential by the agreements HCCI has concluded and

in which HCCI has agreed to treat such information as confidential and proprietary. HCCI

objects to the Subpoena in that it seeks documents containing information which is confidential,

has been contractually defined as confidential and which HCCI has agreed to treat as confidential

and proprietary.

     4.    HCCI objects to the Subpoena to the extent that the documents and things it seeks

contain confidential business proprietary information of HCCI and others, disclosure of which

would harm HCCI's competitive advantage and the competitive advantage of others, if the

documents sought are produced. In particular, the documents sought render the Subpoena

particularly harmful to HCCI's competitive advantages and, in fact, their production would risk

HCCI's continued ability to operate and continue to conduct its activities.

     5.    HCCI objects to the Subpoena as overly broad, unduly burdensome, harmful to

HCCI and disproportionate to the needs of this case, because HCCI and its ability to operate and

continue to conduct its activities would be harmed by HCCI being forced to provide the

documents sought by the Subpoena as it could be a disincentive to HCCI's current data

contributors' continuing to provide their respective health care cost and utilization data to HCCI.

     6.    HCCI objects to the Subpoena as overly broad, unduly burdensome, harmful to

HCCI and disproportionate to the needs of this case, because HCCI and its ability to operate and

continue to conduct its activities would be harmed by HCCI being forced to provide the

documents sought by the Subpoena as it could harm HCCI's ability to seek out and secure

additional and new data contributors who are willing to provide their health care cost and utilization data to HCCI.

7.      HCCI objects to the Subpoena to the extent that if HCCI provides the documents and things the Subpoena seeks, the production could harm the de-identified status, pursuant to 45 C.F.R. § 164.514(b), of the information that HCCI has, which would be unduly burdensome and harmful to HCCI and disproportionate to the needs of this case.

8.      HCCI objects to the Subpoena to the extent that the requests are vague and ambiguous.

9.      HCCI objects to the Subpoena to the extent the documents it seeks are better sought from another person or entity.

10.      HCCI objects to the Subpoena to the extent it seeks to impose duties upon HCCI in excess of those imposed by the Federal Rules of Civil Procedure.  In responding to the Subpoena, HCCI shall do so in accordance with its understanding of its duties under the Federal Rules of Civil Procedure.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

HCCI incorporates the following objections to definitions and instructions into its objections to specific requests, below, as if fully stated therein:

1.      HCCI objects to the definition of "HCCI" as overly broad, unduly burdensome, and seeking to impose obligations in excess of those imposed by the Federal Rules of Civil Procedure.  HCCI will construe the word "You" as referring to HCCI, which is the entity which was served the Subpoena.

2.      HCCI objects to the definition of "Contributor," on the ground that it is not based in reality as Assurant Health has not provided any data to HCCI.

3.　　　HCCI objects to Instruction Nos. 6-13, on the ground that they seek to impose

duties upon HCCI in excess of those imposed by the Federal Rules of Civil Procedure.  In

responding to the Subpoena, HCCI shall do so in accordance with its understanding of its duties

under the Federal Rules of Civil Procedure.

## **OBJECTIONS TO SPECIFIC REQUESTS**

1.  All Contributor Claims Data relating to facilities, goods and/or services rendered by
    Health Care Providers in the United States contained in the following or comparable
    Generalized Data Fields:

    a.　　Unique Facility Identifier
    b.　　Facility National Provider Identifier (NPI)
    c.　　Facility Address, including Street, City, State, and ZIP Code
    d.　　Facility Type(s) or Specialt(ies)
    e.　　Unique Billing and/or Contracting Provider Identifier
    f.　　Billing and/or Contracting Provider National Provider Identifier (NPI)
    g.　　Billing and/or Contracting Provider Address, including Street, City, State, and
    　　　ZIP Code
    h.　　Billing and/or Contracting Provider Type(s) or Specialt(ies)
    i.　　Unique Servicing Provider Identifier
    j.　　Servicing Provider National Provider Identifier (NPI)
    k.　　Servicing Provider Address, including Street, City, State, and ZIP Code
    l.　　Servicing Provider Type(s) or Specialt(ies)
    m.　　Provider Employer Identification Number (EIN)
    n.　　Provider Network Status (e.g., in-network, out-of-network)
    o.　　Unique Contributor Identifier
    p.　　Unique Contributor Plan Identifier
    q.　　Plan Type (e.g., HMO, PPO, indemnity, self-funded, standalone)
    r.　　Plan Coverage Type (e.g., individual, small group, large group)
    s.　　Unique Patient Identifier
    t.　　Patient Sex
    u.　　Patient Age (in years)
    v.　　Patient ZIP Code
    w.　　Patient Relationship to Subscriber (e.g., self, spouse, child)
    x.　　Unique Group Identifier
    y.　　Group Name
    z.　　Group ZIP Code
    aa.　　Indicator of Group's Participation in a Network Savings Program
    bb.　　Unique Claim Identifier
    cc.　　Unique Claim Line Identifier
    dd.　　Medical Policy Number Applicable to Claim
    ee.　　Indicator of whether Original Claim or Adjustment to Claim

ff.    Indicator of whether Approved Claim or Denied Claim
gg.   Indicator of whether Inpatient Claim or Outpatient Claim
hh.   Indicator of Coordination of Benefits (e.g., primary, secondary, etc.)
ii.    Indicator of Workers' Compensation Program Claim
jj.    Claim Type (e.g., facility, professional, dental)
kk.   Start Date of Treatment or Admission
ll.    End Date of Treatment or Admission
mm.  Length of Stay (where applicable)
nn.   Admission Type
oo.   Discharge Status
pp.   Indicator of the Facility (where service was provided)
qq.   All Medical Codes associated with the Visit, Admission, Treatment, Anesthesia,
        Diagnosis, or Procedure (e.g., CPT, DRG, ICD, NDC, HCPCS, etc.), including all
        Modifiers
rr.    Units of Service and/or Quantity
ss.    Amount Allowed or Covered
tt.    Amount Billed or Charged
uu.   Amount Paid by Contributor
vv.   Amount Patient Responsible (e.g., deductible, coinsurance, copayment)
ww.  Amount Paid by Patient
xx.   Amount of any Reduction(s), Supplement(s), Discount(s), Restriction(s), or
        Penalt(ies), including Reason Code(s)
yy.   Adjudication Date
zz.   Indicator of the Recipient of Payment (e.g., subscriber, provider)
aaa.  Indicator of Payment Arrangement (e.g., per diem, capitation, percent of
        Medicare, percent of billed charges, etc.)
bbb.  Indicator of Applicable Rate (e.g., per diem rate, room rate, percentage, etc.)

Objections: HCCI objects to Request No. 1 on the ground that it would be overly broad,

unduly burdensome and disproportionate to the needs of this case. HCCI further objects to

Request No. 1 on the ground that it seeks documents containing information which is

confidential, has been contractually defined as confidential, and which HCCI has agreed to treat

as confidential and proprietary. HCCI further objects to Request No. 1 on the ground that it

seeks documents which are protected from disclosure by applicable State or Federal statute,

including (HIPAA). HCCI further objects to Request No. 1 on the ground that it seeks

documents containing confidential business proprietary information of HCCI and others,

disclosure of which would harm the competitive advantage of HCCI and others if they are

produced.  In particular, the documents sought, if produced, would be particularly harmful to HCCI's competitive advantages and risk HCCI's continued ability to operate and continue to conduct its activities.  HCCI objects to Request No. 1 as overly broad, unduly burdensome, harmful to HCCI and disproportionate to the needs of this case, because HCCI and its ability to operate and continue to conduct its activities would be harmed if HCCI is forced to provide the documents sought by Request No. 1 as it could be a disincentive to the current data contributors to continue providing their respective health care cost and utilization data to HCCI and could harm HCCI's ability to seek out and secure additional and new data contributors who are willing to provide their health care cost and utilization data to HCCI.  HCCI further objects to Request No. 1 on the ground it seeks documents containing information that has been de-identified, pursuant to 45 C.F.R. § 164.514(b), and that provision of such documents in response to Request No. 1 could harm the de-identified status of the information, which would be unduly burdensome and harmful to HCCI and disproportionate to the needs of this case.  HCCI further objects to the Subpoena on the ground it seeks documents better sought from another person or entity.

Without waiving any of the foregoing objections, in an effort to provide the Provider Plaintiffs with additional information as to what information HCCI does have in the event the Provider Plaintiffs decide to seek court intervention, HCCI does not have the data requested by the following sub-parts of Request No. 1:  d; h; l; m; o; p; y; z; aa; dd; ee; ff; gg; ii; mm; pp; ww; xx; yy; zz; aaa; and bbb.  HCCI has the data sought by the following sub-parts of Request No. 1, but only in an encrypted format for which HCCI does not have the key to unencrypt the data, nor the right to obtain the key:  a; b; e; f; i; j; and s.  HCCI does have data sought by the following sub-parts of Request No. 1:  c (but only the zip code); g (but only the zip code); k (but only  the zip code); n (but only for 2014 forward); q; r; t; u; v; w; x (but not in all instances); bb; cc; hh

(but only for 2014 forward); jj (but HCCI does not have any dental claims data); kk; ll; nn (only for 2014 forward); oo; qq (but only for CPT, DRG, and ICD codes); rr; ss; tt; uu; and vv.


DATED:  August 9, 2016

_____
Eric J. Wycoff, Esq.
Maine Bar No. 9571
DC Bar No. 469939
ewycoff@pierceatwood.com
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
Tel:  (207) 791-1100

*Attorneys for Third-Party*
*Health Care Cost Institute, Inc.*

# UNITED STATES DISTRICT COURT
## For the District of Columbia

|  |  |
|---|---|
| **In re:  Blue Cross Blue** | **Civil Action Docket No._____** |
| **Shield Antitrust Litigation** | **(Matter pending in N.D. Ala. under** |
| **(MDL No. 2406)** | **Docket No. 2:13-CV-20000-RDP)** |

## Exhibit C to

### Declaration of David Newman in Support of
### Health Care Cost Institute, Inc.'s Motion to Quash Subpoena



Patrick J. Sheehan
psheehan@whatleykallas.com

October 12, 2016

**VIA ELECTRONIC MAIL**

Eric J. Wycoff
Pierce Atwood LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
ewycoff@pierceatwood.com

   **Re:**  ***In re Blue Cross Blue Shield Antitrust Litig.*** **(MDL 2406) (N.D. Ala.)**

Dear Eric:

   This letter follows up on our previous conversation regarding Provider Plaintiffs' subpoena to Health Care Cost Institute ("HCCI"). Based on your comments, we have significantly narrowed our proposal for HCCI's data production. Our revised proposal is attached to this letter. As we have previously discussed, Provider Plaintiffs are willing to pay for the reasonable costs associated with HCCI's production.

   Discovery deadlines are fast approaching in this case. Please inform us by Monday, October 17 whether HCCI accepts our proposal. If HCCI is unwilling to make this production, we plan to file a motion to compel on October 19 to be heard at the November 2 discovery hearing.

   We look forward to hearing from you.

       Sincerely,

       */s/ Patrick J. Sheehan*
       Patrick J. Sheehan

cc:  Joe R. Whatley, Jr., Esq.
   Edith M. Kallas, Esq.
   W. Tucker Brown, Esq.
   Helen L. Eckinger, Esq.
   Nicholas B. Roth, Esq.
   Dennis G. Pantazis, Esq.
   Christa C. Cottrell, Esq.
   Todd M. Stenerson, Esq.

| Field Type | Field Name | Field ID |
|---|---|---|
| Member Enrollment | Patient Identifier (encrypted) | PATID |
| Member Enrollment | Enrollment Month | MNTH |
| Member Enrollment | Enrollment Year | YR |
| Member Enrollment | Gender | GDR |
| Member Enrollment | Aged Band Code | AGE_BAND_CD |
| Member Enrollment | Relationship Code | REL_CD |
| Member Enrollment | State | STATE |
| Member Enrollment | Member Zip Code | MBR_ZIP_5_CD |
| Member Enrollment | Member CBSA Code | MBR_CBSA_CD |
| Member Enrollment | Member Hospital Referral Region Code | HRR_CD |
| Member Enrollment | Business Line | BUS_LINE |
| Member Enrollment | Product | PROD |
| Member Enrollment | Market Segment Code | MKT_SGMNT_CD |
| Member Enrollment | Standard Industry Classification Code | SIC |
| Member Enrollment | Funding | FUNDING |
| Member Enrollment | Group ID (encrypted) (aka Customer Segment System ID) | E_GROUP_ID |
| Inpatient Medical Claim | Patient Identifier (encrypted) | PATID |
| Inpatient Medical Claim | Medical Claim ID (encrypted) | CLMID |
| Inpatient Medical Claim | Claim Sequence Code | CLMSEQ |
| Inpatient Medical Claim | Claim Incurred Year | YR |
| Inpatient Medical Claim | Claim Incurred Month | MNTH |
| Inpatient Medical Claim | Claim Form Type | CLM_FRM_TYP |
| Inpatient Medical Claim | Type of Bill | TOB |
| Inpatient Medical Claim | First Service Date | FST_DT |
| Inpatient Medical Claim | Last Service Date | LST_DT |
| Inpatient Medical Claim | Admit Date | FST_ADMTDT |
| Inpatient Medical Claim | Discharge Date | LAST_DISCHDT |
| Inpatient Medical Claim | Admit ID | ADMIT_ID |
| Inpatient Medical Claim | Admit Type | ADMIT_TYPE |
| Inpatient Medical Claim | Admit Record Flag | ADMITS |
| Inpatient Medical Claim | Length of Stay | LOS |
| Inpatient Medical Claim | Major Diagnostic Category | MDC |
| Inpatient Medical Claim | Claim Paid Date | PAID_DT |
| Inpatient Medical Claim | Charge Amount | CHARGE |
| Inpatient Medical Claim | Net Paid Amount | AMT_NET_PAID |
| Inpatient Medical Claim | Coinsurance Amount | COINS |
| Inpatient Medical Claim | Copayment Amount | COPAY |
| Inpatient Medical Claim | Deductible Amount | DEDUCT |
| Inpatient Medical Claim | Calculated Allowed Amount | CALC_ALLWD |
| Inpatient Medical Claim | Total Member Cost-Share | TOT_MEM_CS |
| Inpatient Medical Claim | Units | UNITS |
| Inpatient Medical Claim | Diagnosis 1 | DIAG1 |
| Inpatient Medical Claim | Diagnosis 2 | DIAG2 |
| Inpatient Medical Claim | Diagnosis 3 | DIAG3 |
| Inpatient Medical Claim | Diagnosis Related Group | DRG |
| Inpatient Medical Claim | Diagnosis Related Group Type | DRG_TYPE |
| Inpatient Medical Claim | Discharge Status | DSTATUS |
| Inpatient Medical Claim | Procedure Code (CPT/HCPCS) | PROC_CD |
| Inpatient Medical Claim | Procedure Code 1 (ICD-9) | PROC1 |

| Field Type | Field Name | Field ID |
|---|---|---|
| Inpatient Medical Claim | Procedure Code 2 (ICD-9) | PROC2 |
| Inpatient Medical Claim | Procedure Code 3 (ICD-9) | PROC3 |
| Inpatient Medical Claim | Procedure Code Modifier (CPT/HCPCS) | PROCMOD |
| Inpatient Medical Claim | Revenue Code | RVNU_CD |
| Inpatient Medical Claim | Place of Service | POS |
| Inpatient Medical Claim | National Provider Identifier (encrypted) | HNPI |
| Inpatient Medical Claim | National Provider Identifier of Prescriber (encrypted) backfill flag | HPNI_FILL_FLG |
| Inpatient Medical Claim | Provider Category | PROVCAT |
| Inpatient Medical Claim | Provider Zip Code | PROV_ZIP_5_CD |
| Inpatient Medical Claim | Provider Zip Code backfill flag | PROV_ZIP5_FILL_FLG |
| Inpatient Medical Claim | Provider CBSA Code | PROV_CBSA_CD |
| Inpatient Medical Claim | HCCI High Level Service Category | HCCI_HL_CAT |
| Inpatient Medical Claim | HCCI Detailed Service Category | HCCI_DET_CAT |
| Outpatient Medical Claim | Patient Identifier (encrypted) | PATID |
| Outpatient Medical Claim | Medical Claim ID (encrypted) | CLMID |
| Outpatient Medical Claim | Claim Sequence Code | CLMSEQ |
| Outpatient Medical Claim | Claim Incurred Year | YR |
| Outpatient Medical Claim | Claim Incurred Month | MNTH |
| Outpatient Medical Claim | Claim Form Type | CLM_FRM_TYP |
| Outpatient Medical Claim | Type of Bill | TOB |
| Outpatient Medical Claim | First Service Date | FST_DT |
| Outpatient Medical Claim | Last Service Date | LST_DT |
| Outpatient Medical Claim | Claim First Date | CLM_FST_DT |
| Outpatient Medical Claim | Visit ID | VISITID |
| Outpatient Medical Claim | Visit Record Flag | VISITS |
| Outpatient Medical Claim | Procedure Record Flag | PROCS |
| Outpatient Medical Claim | Claim Paid Date | PAID_DT |
| Outpatient Medical Claim | Charge Amount | CHARGE |
| Outpatient Medical Claim | Net Paid Amount | AMT_NET_PAID |
| Outpatient Medical Claim | Coinsurance Amount | COINS |
| Outpatient Medical Claim | Copayment Amount | COPAY |
| Outpatient Medical Claim | Deductible Amount | DEDUCT |
| Outpatient Medical Claim | Calculated Allowed Amount | CALC_ALLWD |
| Outpatient Medical Claim | Total Member Cost-Share | TOT_MEM_CS |
| Outpatient Medical Claim | Units | UNITS |
| Outpatient Medical Claim | Diagnosis 1 | DIAG1 |
| Outpatient Medical Claim | Diagnosis 2 | DIAG2 |
| Outpatient Medical Claim | Diagnosis 3 | DIAG3 |
| Outpatient Medical Claim | Diagnosis Related Group | DRG |
| Outpatient Medical Claim | Diagnosis Related Group Type | DRG_TYPE |
| Outpatient Medical Claim | Discharge Status | DSTATUS |
| Outpatient Medical Claim | Procedure Code (CPT/HCPCS) | PROC_CD |
| Outpatient Medical Claim | Procedure Code 1 (ICD-9) | PROC1 |
| Outpatient Medical Claim | Procedure Code 2 (ICD-9) | PROC2 |
| Outpatient Medical Claim | Procedure Code 3 (ICD-9) | PROC3 |
| Outpatient Medical Claim | Procedure Code Modifier (CPT/HCPCS) | PROCMOD |
| Outpatient Medical Claim | Revenue Code | RVNU_CD |
| Outpatient Medical Claim | Place of Service | POS |
| Outpatient Medical Claim | National Provider Identifier (encrypted) | HNPI |

| Field Type | Field Name | Field ID |
|---|---|---|
| Outpatient Medical Claim | National Provider Identifier of Prescriber (encrypted) backfill fla | HNPI_FILL_FLG |
| Outpatient Medical Claim | Provider Category | PROVCAT |
| Outpatient Medical Claim | Provider Zip Code | PROV_ZIP_5_CD |
| Outpatient Medical Claim | Provider Zip Code backfill flag | PROV_ZIP5_FILL_FLG |
| Outpatient Medical Claim | Provider CBSA Code | PROV_CBSA_CD |
| Outpatient Medical Claim | HCCI High Level Service Category | HCCI_HL_CAT |
| Outpatient Medical Claim | HCCI Detailed Service Category | HCCI_DET_CAT |
| Physician Medical Claim | Patient Identifier (encrypted) | PATID |
| Physician Medical Claim | Medical Claim ID (encrypted) | CLMID |
| Physician Medical Claim | Claim Sequence Code | CLMSEQ |
| Physician Medical Claim | Claim Incurred Year | YR |
| Physician Medical Claim | Claim Incurred Month | MNTH |
| Physician Medical Claim | Claim Form Type | CLM_FRM_TYP |
| Physician Medical Claim | Type of Bill | TOB |
| Physician Medical Claim | First Service Date | FST_DT |
| Physician Medical Claim | Last Service Date | LST_DT |
| Physician Medical Claim | Procedure Record Flag | PROCS |
| Physician Medical Claim | Claim Paid Date | PAID_DT |
| Physician Medical Claim | Charge Amount | CHARGE |
| Physician Medical Claim | Net Paid Amount | AMT_NET_PAID |
| Physician Medical Claim | Coinsurance Amount | COINS |
| Physician Medical Claim | Copayment Amount | COPAY |
| Physician Medical Claim | Deductible Amount | DEDUCT |
| Physician Medical Claim | Calculated Allowed Amount | CALC_ALLWD |
| Physician Medical Claim | Total Member Cost-Share | TOT_MEM_CS |
| Physician Medical Claim | Units | UNITS |
| Physician Medical Claim | Diagnosis 1 | DIAG1 |
| Physician Medical Claim | Diagnosis 2 | DIAG2 |
| Physician Medical Claim | Diagnosis 3 | DIAG3 |
| Physician Medical Claim | Diagnosis Related Group | DRG |
| Physician Medical Claim | Diagnosis Related Group Type | DRG_TYPE |
| Physician Medical Claim | Discharge Status | DSTATUS |
| Physician Medical Claim | Procedure Code (CPT/HCPCS) | PROC_CD |
| Physician Medical Claim | Procedure Code 1 (ICD-9) | PROC1 |
| Physician Medical Claim | Procedure Code 2 (ICD-9) | PROC2 |
| Physician Medical Claim | Procedure Code 3 (ICD-9) | PROC3 |
| Physician Medical Claim | Procedure Code Modifier (CPT/HCPCS) | PROCMOD |
| Physician Medical Claim | Revenue Code | RVNU CD |
| Physician Medical Claim | Place of Service | POS |
| Physician Medical Claim | National Provider Identifier (encrypted) | HNPI |
| Physician Medical Claim | National Provider Identifier of Prescriber (encrypted) backfill flag | HNPI_FILL_FLG |
| Physician Medical Claim | Provider Category | PROVCAT |
| Physician Medical Claim | Major Physician Specialty | MAJ_SPEC |
| Physician Medical Claim | Primary Care Physician Flag | PCP |
| Physician Medical Claim | Provider Zip Code | PROV_ZIP_5_CD |
| Physician Medical Claim | Provider Zip Code backfill flag | PROV_ZIP5_FILL_FLG |
| Physician Medical Claim | Provider CBSA Code | PROV_CBSA_CD |
| Physician Medical Claim | HCCI High Level Service Category | HCCI_HL_CAT |
| Physician Medical Claim | HCCI Detailed Service Category | HCCI_DET_CAT |

# UNITED STATES DISTRICT COURT
### For the District of Columbia

| | |
|---|---|
| **In re:  Blue Cross Blue** | **Civil Action Docket No._____** |
| **Shield Antitrust Litigation** | **(Matter pending in N.D. Ala. under Docket No. 2:13-CV-20000-RDP)** |
| **(MDL No. 2406)** | |

### Exhibit D to

### Declaration of David Newman in Support of
### Health Care Cost Institute, Inc.'s Motion to Quash Subpoena

# PIERCE ATWOOD LLP

**ERIC J. WYCOFF**

Merrill's Wharf
254 Commercial Street
Portland, ME  04101

**P** 207.791.1221
**F** 207.791.1350
ewycoff@pierceatwood.com
pierceatwood.com

Admitted in: DC, ME

**Via Email**

October 17, 2016

Patrick J. Sheehan, Esq.
psheehan@whatleykallas.com
Whatley Kallas, LLP
60 State Street
Boson, MA  02109

Re:   *In re Blue Cross Blue Shield Antitrust Litigation*
      MDL NO. 2406, Case No. 2:13-cv-20000-RDP (N.D. Ala.)

Dear Patrick:

I am in receipt of your letter dated October 12, 2016, in which you propose limiting the information sought pursuant to the subpoena you served on my client, Health Care Cost Institute, Inc. ("HCCI"), and propose paying the costs associated with any production.  However, your proposal does not address the most significant issues implicated by the subpoena, as noted in HCCI's objections dated August 9, 2016.  Therefore, HCCI stands by its previously-served objections.

Very truly yours,

Eric J. Wycoff

EJW/mlc

cc:   Joe R. Whatley, Esq.
      Edith M. Kallas, Esq.
      W. Tucker Brown, Esq.
      Helen L. Eckinger, Esq.
      Nicholas B. Roth, Esq.
      Dennis G. Pantazis, Esq.
      Christa C. Cottrell, Esq.
      Todd M. Stenerson, Esq.